PAGES 1-32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

SILICON STORAGE TECHNOLOGY, INC.,    )
                                      )
            PLAINTIFF,                )
                                      )
  VS.                                 ) NO. C 10-01515 MHP
                                      )
XICOR LLC,                            )
                                      )  SAN FRANCISCO, CALIFORNIA
            DEFENDANT.                )  MONDAY
                                      )  SEPTEMBER 20, 2010
_____)  4:00 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          **COVINGTON & BURLING LLP**
                            9191 TOWNE CENTRE DRIVE, 6TH FLOOR
                            SAN DIEGO, CALIFORNIA 92122-1225
                      BY:  **ALAN H. BLANKENHEIMER, ESQUIRE**
                           **DANIELLE L. GOLDSTEIN, ATTORNEY AT LAW**
                           **JO DALE CAROTHERS, PH.D.**


**FOR DEFENDANT:**          **SHORE CHAN BRAGALONE DEPUMPO LLP**
                            901 MAIN STREET, SUITE 3300
                            DALLAS, TEXAS 75202
                      BY:  **MICHAEL W. SHORE, ESQUIRE**


FURTHER APPEARANCE ON NEXT PAGE.


*REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*
        *OFFICIAL REPORTER - US DISTRICT COURT*
         *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

**FURTHER APPEARANCE:**

**ALSO FOR DEFENDANT:**

**BECK, ROSS, BISMONTE & FINLEY, LLP**

50 WEST SAN FERNANDO STREET

SUITE 1300

SAN JOSE, CALIFORNIA 95113

BY:  **KIMBERLY PAUL ZAPATA, ATTORNEY AT LAW**

SEPTEMBER 20, 2010                            4:00 O'CLOCK  P.M.


                    P R O C E E D I N G S

          THE CLERK:  CALLING CIVIL 10-1515, SILICON STORAGE

TECHNOLOGY VERSUS INTERSIL CORPORATION.

          THE COURT:  INTERSIL OR XICOR?  I'VE GOT XICOR.

WHERE DID YOU GET INTERSIL FROM?  INTERSIL IS INVOLVED, BUT IT'S

XICOR.

          WHO IS THE PARTY HERE?  XICOR WAS THE ONE THAT WAS

SUED?

          MR. BLANKENHEIMER:  YOUR HONOR, SST IS THE PLAINTIFF.

WE SUED BOTH INTERSIL AND XICOR, BUT WE HAVE DISMISSED WITHOUT

PREJUDICE INTERSIL.

          THE COURT:  I SEE.

          AND WE DIDN'T GET APPEARANCES. I JUST WANTED TO KNOW

WHAT WAS GOING ON WITH THE NAME HERE.  SORRY.

          MR. BLANKENHEIMER:  ALAN BLANKENHEIMER, COVINGTON &

BURLING, FOR THE PLAINTIFF, SILICON STORAGE TECHNOLOGY.  WITH ME

JO DALE CAROTHERS AND DANIELLE GOLDSTEIN.

          THE COURT:  GOOD AFTERNOON.

          MS. ZAPATA:  AND KIM ZAPATA AND MICHAEL SHORE FOR THE

DEFENDANT XICOR.

          MR. SHORE:  NICE TO MEET YOU, YOUR HONOR.

          THE COURT:  GOOD AFTERNOON. NOW, WHO ON BEHALF OF

XICOR IS THE GOING TO BE TALKING ABOUT THIS CASE MANAGEMENT

        KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

CONFERENCE?

MR. SHORE:  I AM, YOUR HONOR.

THE COURT:  OKAY.

MR. SHORE:  MICHAEL SHORE.

THE COURT:  ARE THERE ANY OTHER LAWSUITS PENDING BETWEEN THESE PARTIES?  DO YOU HAVE ANY?  BECAUSE THIS WAS BROUGHT AS A DEC RELIEF ACTION.

MR. BLANKENHEIMER:  THAT IS SO, YOUR HONOR.  AND TO MY KNOWLEDGE, THERE ARE NOT.

THE COURT:  AND YOU'RE NOT AWARE OF ANY LAWSUITS EITHER WITH INTERSIL OR XICOR AGAINST SILICON STORAGE --

MR. SHORE:  NO, MA'AM.

THE COURT:  -- FOR INFRINGEMENT?  OKAY.

AND DID I UNDERSTAND FROM SOMETHING I READ THAT THERE WAS GOING TO BE OR LIKELY TO BE SOME COUNTERCLAIMS?

MR. SHORE:  YOUR HONOR, WE DON'T KNOW.  AND IF I CAN GIVE YOU A VERY BRIEF BACKGROUND I THINK IT WOULD HELP PLACE THE ISSUES IN CONTEXT FOR THE COURT.

XICOR IS ACTUALLY A WHOLLY-OWNED SUBSIDIARY OF INTERSIL. XICOR BOUGHT INTERSIL, AND AT THE TIME INTERSIL WAS RUN BY A MAN NAMED BING YEH.

BING YEH LEFT XICOR SOON AFTER INTERSIL PURCHASED XICOR, NOT LONG AFTER FORMED SILICON STORAGE TECHNOLOGIES.

SILICON STORAGE TECHNOLOGIES SUBSEQUENTLY INTRODUCED SOME PRODUCTS WHICH WE BELIEVE THAT WERE BASED UPON THINGS THAT

HE TOOK FROM XICOR WITH HIM WHEN HE WENT TO SST.

BEFORE MICROCHIP --

THE COURT:  SO WHAT'S HIS LAST NAME, BING?  WHAT'S HIS FIRST NAME?

MR. SHORE:  YEH, Y-E-H.

THE COURT:  YEH.  HE WENT TO SST?

MR. SHORE:  HE FORMED SST.

THE COURT:  OH, HE FORMED SST?

MR. SHORE:  YES.  HE LEFT XICOR AFTER THE PURCHASE.  INTERSIL PURCHASED XICOR FOR $300 MILLION.  MR. YEH TOOK HIS MONEY, WENT AND FORMED SST, STARTED MAKING SOME PRODUCTS WHICH WE BELIEVE WE CAN TRACE BACK TO TECHNOLOGY THAT HE TOOK FROM XICOR WHEN HE LEFT.

MICROCHIP, WHICH IS NOW THE OWNER OF SST, ANNOUNCED THAT THEY HAD PLANS TO BUY SST.  AT THE TIME, FOR OVER A YEAR, INTERSIL HAD BEEN INVESTIGATING FILING A SUIT AGAINST SST, NOT MICROCHIP.

AND SO WE ACCELERATED OUR PLANS TO PUT THEM ON NOTICE SO THAT MICROCHIP DIDN'T BUY SOMETHING ONLY TO FIND OUT THEY WERE BUYING A LAWSUIT.

SO WE PUT SST ON NOTICE, NOT MICROCHIP, BECAUSE WE DIDN'T WANT TO TORTIOUSLY INTERFERE WITH THEIR MERGER, OR BE ACCUSED OF THAT.  BUT WE PUT SST ON NOTICE.

WE ARRANGED A MEETING WITH SST TO TAKE PLACE TO DISCUSS OUR CONCERNS. THE MEETING WAS SET. THE MICROCHIP PEOPLE

WERE AWARE THE MEETING WAS SET, BUT WE HAD A COUPLE OF VERY FUNDAMENTAL, BASIC QUESTIONS THAT WE WOULD LIKE TO GET ANSWERED.

INSTEAD OF ATTENDING THE MEETING, MICROCHIP CLOSED THE DEAL AND SUED US FOR THE DECLARATORY JUDGMENT.

IT'S KIND OF AN INTERESTING CASE BECAUSE THERE ARE LITERALLY --

THE COURT:  THAT'S GOOD TO HEAR.

MR. SHORE:  IT'S AN INTERESTING CASE, AND IT'S ALSO POTENTIALLY A VERY LARGE CASE.  BUT WE'RE -- BECAUSE THIS TECHNOLOGY THAT WE BELIEVE IS -- WE BELIEVE IS INTERSIL'S TECHNOLOGY OR XICOR'S TECHNOLOGY PRODUCES ABOUT 40 TO $50 MILLION IN ROYALTIES FOR SST.  THEY LICENSE IT OUT TO THIRD PARTIES.

IT'S ALSO INVOLVED IN SEVERAL HUNDRED MILLION DOLLARS IN SALES OF A TECHNOLOGY CALLED "SUPER FLASH."  THAT'S THE TRADEMARK NAME OF THIS TECHNOLOGY.

THE COURT:  AND TELL ME A LITTLE BIT ABOUT THE TECHNOLOGY, BRIEFLY --

MR. SHORE:  IT'S A FORM OF --

THE COURT:  -- IN COMPREHENSIBLE TERMS.

MR. SHORE:  OKAY.  IT'S A FORM IF FLASH MEMORY.

THE COURT:  I SEE.

MR. SHORE:  IT'S A SPECIALIZED, VERY ADVANCED FORM OF FLASH MEMORY THAT IS INCORPORATED INTO MICROPROCESSORS AND INTEGRATED CIRCUITS FROM A NUMBER OF COMPANIES.

AND WHAT SST'S MODEL WAS IS THEY LICENSE THE TECHNOLOGY OUT TO SAMSUNG. IT'S MADE -- THEY DIDN'T OWN A FACTORY, SO EVERYTHING WAS MANUFACTURED OVERSEAS.  MOSTLY AT A COMPANY CALLED "TSMC," WHICH YOU ARE PROBABLY AWARE OF.

IT'S A TAIWAN SEMICONDUCTOR MANUFACTURING CORPORATION.  BUT IT'S ALSO MADE AT OTHER PLACES.  SO THEY COLLECTED TENS OF MILLIONS OF DOLLARS A YEAR IN ROYALTIES.

AND ONE OF THEIR LARGER, WE BELIEVE, CUSTOMERS OR USERS OF THIS TECHNOLOGY IS MICROCHIP. AND SO ULTIMATELY WHAT WE WERE TRYING TO FIND OUT FROM SST IN THIS MEETING WERE TWO RELATIVELY DISCRETE ISSUES.

THE PATENT AT ISSUE IS A REEXAM -- IT'S ALREADY BEEN THROUGH REEXAMINATION, ALREADY BEEN REISSUED.  THE ART HAS BEEN THOROUGHLY VETTED AND LOOKED AT.  BUT IT IS A PRODUCT BY PROCESS CLAIM.  AND MOST OF THE PROCESS STEPS AND MOST OF THE PRODUCT FEATURES YOU CAN DO REVERSE ENGINEERING, AND YOU CAN SEE THEM.

AND THE REVERSE ENGINEERING THAT IS USED IS PRIMARILY DOING CUTS OF THE DEVICE AND LOOKING TO SEE IF CERTAIN STRUCTURES ARE PRESENT.

THERE ARE TWO PROCESS STEPS THAT ALTHOUGH THEY ARE CIRCUMSTANTIAL EVIDENCE OF THEIR EXISTENCE -- AND OUR EXPERTS SAY THEY ARE ALMOST CERTAINLY THERE -- CANNOT BE OBJECTIVELY PROVEN BY REVERSE ENGINEERING.  AND THOSE TWO PROCESS STEPS ARE -- ONE OF THE CLAIM ELEMENTS THAT'S REQUIRED IS AN ANNEALED SILICON DIOXIDE TUNNELING LAYER, WHERE YOU CAN LOOK AT THE

CROSS-SECTION, AND SEE CAN SEE A SILICON DIOXIDE --

**THE COURT:** YOU'RE TALKING ABOUT, WHAT, A CROSS-SECTION OF A CHIP?

**MR. SHORE:** CROSS-SECTION OF A CHIP. YOU CAN LOOK AT THE CROSS-SECTION OF A CHIP, AND YOU CAN SEE A SILICON DIOXIDE TUNNELING LAYER. WHAT YOU CAN'T SEE IS WHETHER IT'S ANNEALED.

AND SO ONE OF THE THINGS WE WANTED TO HAVE IN OUR MEETING WITH SST WAS WE WANT A DISCLOSURE FROM THEM BESIDES THE CIRCUMSTANTIAL EVIDENCE OF ANNEALING, WE WANTED TO KNOW WHETHER OR NOT THEY HAVE AN ANNEALING STEP.

THE SECOND THING IS THAT THIS SILICON DIOXIDE TUNNELING LAYER HAS TO BE FORMED BY LOW PRESSURE CHEMICAL VAPOR DEPOSITION, LPCVD. YOU CAN LOOK AT IT, AND OUR ENGINEERS AT INTERSIL, WHICH IS ITSELF A BILLION DOLLAR COMPANY, THEY CAN LOOK AT IT, AND THEY CAN SAY THAT THAT'S THE ONLY LOGICAL WAY TO DO IT, BUT YOU CAN'T PROVE IT BY SIMPLY CROSS-SECTION.

SO WE HAD TWO QUESTIONS FOR THEM AT OUR MEETING THAT NEVER TOOK PLACE IS: DO YOU DO ANNEALING, AND DO YOU DO LPCVD?

INTERESTINGLY, SST HAS SOME LATER PATENTS ON THIS SAME PROCESS WHERE THEY DISCLOSE IN THEIR PATENTS ANNEALING AND LPCVD. SO THESE PATENTS THAT THEY HAVE LICENSED FOR TENS OF MILLIONS OF DOLLARS A YEAR, YOU KNOW, IN ROYALTIES BOTH INCLUDE THESE ELEMENTS. AND SO WE HAD ALWAYS ASSUMED THAT THOSE ELEMENTS WERE PRESENT. AND THERE'S OTHER ENGINEERING CIRCUMSTANTIAL EVIDENCE.

SO, YOU KNOW, OUR GOAL IN MEETING WITH THEM WAS TWOFOLD:  TO GET THAT -- FIND OUT IF THOSE TWO PROCESS STEPS WERE THERE.  AND WE TOLD THEM.  WE TOLD THEM WHEN WE DID MEET WITH THEM SUBSEQUENT TO SUIT WE TOLD THEM:

"GIVE US YOUR RECIPES AND PROCESS FLOWS, AND IF THESE THINGS AREN'T THERE, WE GO AWAY.  WE LEAVE YOU ALONE. WE NEVER -- YOU KNOW, IF THESE THINGS OR THEIR EQUIVALENTS ARE NOT THERE, WE'RE DONE.  WE DON'T NEED TO SUE EACH OTHER.  WE DON'T NEED TO HAVE ANY DISPUTES.  WE WANT TO FIND OUT IF THOSE TWO THINGS ARE THERE."

NOW, ONE OF THE THINGS THAT I EXPECT THAT THEY ALSO -- AND THERE'S ONE OTHER KEY ISSUE IN THE CASE THAT I THINK IS DISPOSITIVE. THEY CLAIM THAT THE REEXAMINATION RESULTED IN A BROADENING OF CLAIMS, A BROADENING REISSUE, WHICH IS A PURELY LEGAL MATTER.

IT'S NOT ANYTHING FOR A JURY. IT'S NOT EVEN ANYTHING THEY NEED DISCOVERY ON.  IT'S A PURELY LOOK AT THE PROSECUTION HISTORY.  LOOK AT THE PATENT BEFORE.  LOOK AT THE PATENT AFTER. WAS IT AN IMPROPER BROADENING REISSUE?

SO THOSE --

**THE COURT:**  THAT'S UNUSUAL TO HAVE A BROADENING ISSUE, ISN'T?

**MR. SHORE:**  WELL --

**THE COURT:**  USUALLY, IF IT'S ANYTHING, IT'S THE OTHER

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

WAY AROUND.  IT GOES IN THE OTHER DIRECTION.

MR. SHORE:  YES.

THE COURT:  MORE RESTRICTIVE.

MR. SHORE:  YES.  THAT IS GENERALLY WHAT YOU MIGHT SEE.  BUT THERE ARE BROADENING REISSUES AND THERE ARE IMPROPER BROADENING REISSUES, AND YOU HAVE TO LOOK FOR SUPPORT IN THE SPECIFICATION.  IT'S A PURELY LEGAL ISSUE.  IT WOULD BE FOR THE COURT TO DECIDE.

SO ONE OF THE REASONS THAT WE CAME UP WITH THIS ORIGINAL SCHEDULE WAS TO GIVE US 90 DAYS.  AND I'LL SAY ONE OF THE REASONS FOR THE 90 DAYS IS I START A TRIAL OCTOBER 12TH IN TYLER.  AND IT'S A VERY COMPLEX, LARGE CASE.  AND IT WILL PROBABLY TAKE -- YOU KNOW, IT'S GOING TO TAKE ALL MY TIME BETWEEN NOW AND OCTOBER 12TH TO PREPARE FOR.

AND BETWEEN THE TRIAL AND THE POSTJUDGMENT SHENANIGANS THAT HAPPEN IN TYLER, TEXAS, IT WILL TAKE ME AWHILE TO RECOVER.

THE COURT:  SHENANIGANS IN TYLER, TEXAS?

MR. SHORE:  I THINK THE LEGAL TERM IS "POSTJUDGMENT MOTIONS."  BUT THE TERM THAT I OFTEN USE OUT THERE ARE "SHENANIGANS."  SO I'M FROM EAST TEXAS, SO I CAN SAY THAT.

THE COURT:  I GATHERED FROM YOUR ACCENT IT WAS SOMEWHERE IN THE ENVIRONS.

MR. SHORE:  YES, MY NEAREST NEIGHBOR GROWING UP WAS 14 MILES AWAY, AND I DON'T THINK THEY LIKED US.  BUT WE WERE ALL

BOYS.  THEY WERE ALL GIRLS.  IT'S A LONG STORY.

BUT, ANYWAY, SO THE REASON FOR THE 90 DAYS IS WE WERE HOPING THAT WE COULD FIND OUT -- DO SOME LIMITED DISCOVERY, FIND OUT WHETHER THEY DO ANNEALING; FIND OUT WHETHER THEY DO LPCVD, OR THE EQUIVALENT OF EITHER.

THERE'S REALLY NOT MUCH OF AN EQUIVALENT ON ANNEALING, BUT THERE ARE SOME EQUIVALENTS ON LPCVD.  AND THEN, MEET AGAIN.

AND I UNDERSTAND THAT THAT DISCOVERY IS NOT GOING TO DETERMINE THEIR VIEW OF WHETHER OR NOT THE REISSUE IS APPROPRIATE.  THAT'S SOMETHING THAT CAN ONLY BE DONE BY THE COURT.  BUT IT CERTAINLY COULD RESULT IN EITHER US SAYING:

"THANK YOU VERY MUCH FOR YOUR TIME AND TROUBLE, AND WE'RE DONE."

OR IT COULD BE THAT WE'VE NOW SHOWN THAT THERE IS LPCVD.  THERE IS ANNEALING.  THE INFRINGEMENT CASE IS SOLID. THE PATENT'S ALREADY BEEN THROUGH REEXAM. SO AT THAT POINT IN TIME WE EITHER SETTLE THE CASE, OR WE WOULD PROBABLY OFFER THEM A DEAL, SUCH AS:

"FILE A MOTION FOR SUMMARY JUDGMENT ON THE REISSUE ISSUE.  WE WILL HAVE A HIGH-LOW AGREEMENT ON THE OUTCOME OF THAT WITH THE APPEAL."

AND WE HAVE A VERY NICE, SIMPLE, STREAMLINED EASY CASE.  NOW, I PERFECTLY UNDERSTAND THAT THEY HAVE EVERY RIGHT AND ABILITY TO MAKE THIS A DIFFERENT TYPE OF LAWSUIT.

BUT THAT -- AND MAYBE THEY HAVEN'T REALLY MADE UP THEIR MIND YET WHAT TYPE OF LAWSUIT THIS IS GOING TO BE.  BUT I THINK WE NEED THE TIME TO DO THIS LIMITED DISCOVERY ON THESE LIMITED ISSUES, HAVE OUR MEETING.  AND THEN, IF WE DON'T GET ALONG AND HAVE A NICE, YOU KNOW, LIFE WITHOUT EACH OTHER IN THE FUTURE, WE CAN ALWAYS THEN COME BACK AND DO IT THE OLD-FASHIONED WAY AND BOTHER THE COURT AND GET A JURY INVOLVED AND EVERYTHING ELSE.

BUT THAT WAS THE REASON FOR WHAT APPEARS PROBABLY ON PAPER TO BE A SLIGHTLY UNORTHODOX METHOD OF GOING ABOUT THIS. AND I WANTED TO -- HOPE THAT THE COURT WOULD --

**THE COURT:**  WELL, I DON'T MIND UNORTHODOX.  I JUST DON'T LIKE THINGS THAT ARE KEYED TEN DAYS FROM SOMETHING AND 15 DAYS FROM SOMETHING.  YOU KNOW, YOU NEED TO HAVE HARD AND FAST DATES, BECAUSE THERE CAN BE SUCH A MISINTERPRETATION.

ONE SIDE SAYS:

"WELL, I THOUGHT THAT WAS SUCH AND SUCH A DATE." AND THE OTHER SIDE SAYS:

"WELL, 15 DAYS FROM THAT, I FIGURED IT WAS THIS DATE."

AND IT GOES ON DOWN THE LIST.

NOW, DO YOU HAVE ANYTHING YOU WANTED TO SAY WITH RESPECT TO THE PROCEDURE THAT WE USE IN THIS CASE TO RESOLVE IT? BECAUSE ANY WAY THAT ANY CASE CAN BE RESOLVED EXPEDITIOUSLY AND EFFICIENTLY AND ESSENTIALLY AND CONSISTENT WITH RULE ONE, AND

WHAT RULE ONE EXPECTS FROM US, YOU KNOW, THAT'S WHAT WE SHOULD DO.

**MR. BLANKENHEIMER:**  WE WILL CERTAINLY AGREE WITH THE OBJECTIVE,  BUT AS YOU WOULD EXPECT IN A LAWSUIT, WE SEE THE CASE QUITE DIFFERENTLY FROM MR. SHORE.

**THE COURT:**  WELL, SURE.  SURE.

**MR. BLANKENHEIMER:**  AND AMONG OTHER THINGS, THE CASE IS NOT NEARLY AS OLD OR AS SIMPLE AS HE SAYS.  IT'S NOT AS OLD BECAUSE WHEN HE REFERRED TO BING YEH'S LEAVING TO FORM -- LEAVING XICOR TO FORM SST, THAT WAS 22 YEARS AGO.

**THE COURT:**  OH.

**MR. BLANKENHEIMER:**  SECOND, WE DON'T SEE THE SIMPLICITY THAT MR. SHORE WOULD LIKE TO PORTRAY IN THE CASE IN TERMS OF ITS EASY RESOLUTION.

WE DON'T THINK -- WE THINK THAT THERE ARE LIKELY TO BE SIGNIFICANT ISSUES OF VALIDITY.  INDEED, WE THINK WE CAN SHOW THAT THE PATENT IS INVALID.  AND WE THINK THAT THE ISSUES OF INFRINGEMENT WILL DEPEND CRITICALLY ON YOUR HONOR'S CLAIM CONSTRUCTION.

SO WHILE WE WERE PERFECTLY HAPPY -- AND IF YOUR HONOR TOOK THE TROUBLE -- I HOPE YOU DIDN'T -- TO COMPARE OUR ORIGINAL JOINT CASE MANAGEMENT STATEMENT WITH THE AMENDED STATEMENT --

**THE COURT:**  NO.  YOU KNOW, THERE'S ONLY SO MUCH PAPER YOU READ.  AND SO IF YOU DON'T NEED TO READ SOMETHING, IF THEY HAVE AMENDED IT, THEN GO WITH WHAT THEY HAVE AMENDED, YOU KNOW.

**MR. BLANKENHEIMER:**  AND I -- THE PARTIES, I THINK, TRIED TO NEGOTIATE THEIR DIFFERENCES TO THE EXTENT THEY COULD. AND I THINK WE'VE DONE A PRETTY GOOD JOB.

SO WE WERE HAPPY WITH THE 90.  HE AGREED WITH MR. SHORE'S PROPOSAL FOR THE 90-DAY EXTENSION.  WE'RE ALSO HAPPY IF YOUR HONOR WANTS TO -- I SAY "EXTENSION."  NINETY-DAY PERIOD BEFORE THE PATENT LOCAL RULES COME IN.

**THE COURT:**  WELL, THAT EXPLAINS THE 90-DAY PERIOD AT THE OUTSET, AND I THOUGHT:

"WHAT'S GOING ON HERE?"

**MR. BLANKENHEIMER:**  BUT WE WOULD ALSO BE HAPPY, YOUR HONOR -- I KNOW YOUR HONOR INDICATED WHEN WE WERE HERE SOLO THAT THERE WAS -- THAT YOU HAD SOME DISCOMFORT WITH THE LENGTH OF THAT PERIOD.  AND WE WOULD ALSO BE HAPPY TO EXTEND IT FROM NINETY --

**THE COURT:**  I DID SAY --

**MR. BLANKENHEIMER:**  --  FOR SIXTY DAYS.

**THE COURT:**  -- TO THEM, YOU KNOW:

"WHEN OPPOSING COUNSEL COMES, YOU KNOW, SEE IF YOU CAN SHORTEN UP THAT TIME.  AND SO FORTH.  BUT THEN LET'S, YOU KNOW, SET SOME DATES, WHICH THEN THESE 15 FROM AND TEN FROM, ET CETERA CAN FLOW AND HAVE ACTUAL DATES."

WELL, IS THERE -- IS THERE ANY KIND OF A MOTION WITH RESPECT TO THE REISSUE PATENT AND ISSUES RELATED TO THE REISSUE

THAT WOULD SHORT CIRCUIT ANY OF THIS?  OR ARE WE GOING TO HAVE TO DO CLAIM CONSTRUCTION?

            **MR. SHORE:**  NO. I MEAN, ABSOLUTELY, YOUR HONOR. I THINK THEY OUGHT TO BE ABLE TO FILE THEIR MOTION THAT THIS IS AN IMPROPER BROADENING REISSUE. THEY SHOULD BE ABLE TO FILE THAT TOMORROW.

            THEY HAVE BEEN AWARE OF THIS ISSUE.  IN FACT, THEY RAISED IT WHEN WE MET BEFORE.  AND THEY CLAIM THIS IS THE BE ALL END ALL.  I HAVE ZERO CONCERN ABOUT THAT.  MAYBE I'LL SEE THEIR PAPERS, AND I'LL DEVELOP A CONCERN.

            THE ONLY REASON WHY I WOULD ASK FOR THE 90 DAYS IS BECAUSE, A, MY TRIAL, AND THE HOLIDAYS COMING UP. AND THEN, THE SECOND THING IS:  IF THIS TECHNOLOGY -- IF WE GET THE INFORMATION ABOUT THE ANNEALING, AND WE GET THE INFORMATION ABOUT THE OLD LPCVD, THERE WILL BE PARTIES ADDED. MICROCHIP WILL BE ADDED.

            THERE'S A COMPANY CALLED "GREENLIANT" WHICH WILL LIKELY BE ADDED.  WE'RE NOT GOING TO ADD ANYBODY UNTIL WE HAVE, YOU KNOW, GOOD OBJECTIVE EVIDENCE THAT SATISFIES NOT ONLY RULE 11, BUT SATISFIES MY INCREDIBLY CONSERVATIVE CLIENT WHO HAS NEVER SUED ANYBODY IN A SITUATION LIKE THIS BEFORE.  I HAVE AN INCREDIBLY CONSERVATIVE CEO, AND THEY WANT TO SEE ALL THE I'S DOTTED AND T'S CROSSED BEFORE THIS IS DONE.

            SO IT'S NOT -- AND I DON'T MIND EVEN FIRM DAY, YOU KNOW, 90 DAYS OUT, FIRM DAYS.  THAT'S FINE.  I HAVE NO PROBLEM

WITH THAT AT ALL.

BUT I WOULD LIKE TO HAVE A FAIR OPPORTUNITY TO PRESENT TO THEM OUR EVIDENCE ONCE IT'S GATHERED.  WE'VE ALREADY SENT THEM CLAIM CHARTS, DETAILED CLAIM CHARTS ON SOME PRODUCTS WITH THOSE TWO SORT OF WINDOWS.

AND I THINK THAT WOULD BE THE BEST WAY TO DO IT.  BUT AS FAR AS THEM FILING A MOTION ON THE BROADENING REISSUE CLAIM I INVITE THEM.  THEY CAN FILE IT TOMORROW.  WE CAN HAVE OUR RESPONSE DONE IN A MONTH.

**THE COURT:**  IS THAT A WORTHWHILE USE OF TIME?

**MR. BLANKENHEIMER:**  AS TO THE MOTION ON THE BROADENING ISSUE, YOUR HONOR --

**THE COURT:**  YES.  YES.

**MR. BLANKENHEIMER:**  -- WE THINK WE NEED DISCOVERY FIRST.  WE WANT TO TAKE THEIR INVENTOR. WE WANT TO INQUIRE, AND AS WE HAVE A RIGHT TO DO, INTO THE PROSECUTION OF THE PATENT. AND AT THAT POINT --

**THE COURT:**  YOU'VE SEEN THE PROSECUTION HISTORY, I ASSUME.

**MR. BLANKENHEIMER:**  WE HAVE, YOUR HONOR. THAT'S RIGHT.

**THE COURT:**  WHAT CAN YOU TELL?  WHAT CAN YOU TELL FROM THAT?  DOES IT SHED ANY LIGHT ON THE ISSUE?

**MR. BLANKENHEIMER:**  WELL, OF COURSE, IT SHEDS SOME LIGHT ON THE ISSUE, BUT WE HAVEN'T HAD A CHANCE TO THE TALK TO

THE INVENTOR, AND WE WOULD LIKE TO DO THAT.  AND THEN, ASSESS WHETHER THAT IS, IN TERMS OF OUR OVERALL STRATEGY, IT WOULD BE APPROPRIATE TO BRING THAT MOTION, IF AT ALL.

AT THIS POINT, WE THINK THAT BOTH SIDES OUGHT TO PROCEED WITH THE DISCOVERY THAT'S ANTICIPATED IN THE CASE MANAGEMENT STATEMENT, AND THEN WE CAN REASSESS.

**MR. SHORE:**  AND YOUR HONOR --

**THE COURT:**  WHO IS THE INVENTOR?

**MR. BLANKENHEIMER:**  THE INVENTOR WAS --

**THE COURT:**  NOT BING YEH, THEN.

**MR. BLANKENHEIMER:**  NO, IT WAS NOT.

**MR. SHORE:**  NO.

**MR. BLANKENHEIMER:**  IT WAS NOT.

**MR. SHORE:**  AND, AGAIN, IT'S A PURELY LEGAL ISSUE. AND THERE'S NOTHING THE INVENTOR CAN SAY THAT'S GOING TO CHANGE THE SCOPE OF THE PATENT BEFORE AND AFTER AND THE BASIS FOR THE LANGUAGE BEING CHANGED.  THE INVENTOR DID NOT APPEAR BEFORE THE PATENT OFFICE IN THE REEXAM.

THIS INVENTOR -- I MEAN, THIS IS A PURELY LEGAL ISSUE.  AND, AGAIN, IF THEY -- AS HE SAID BEFORE, THIS IS AN OLD PATENT.  IT'S BEEN AROUND A LONG TIME.  SO NOT ONLY IS THIS A PURELY LEGAL ISSUE, BUT THE INVENTOR'S TESTIMONY CANNOT CHANGE. IT'S ALSO GOING TO BE ASKING THE INVENTOR ABOUT THINGS THAT HAPPENED OVER A DECADE AGO, PROBABLY 15 YEARS AGO.

SO, AGAIN, IT'S THEIR RIGHT TO CONDUCT THEIR LAWSUIT.

THEY ARE THE PLAINTIFF.  IF THEY WANT TO CONDUCT THEIR LAWSUIT, I SUPPOSE THEY CAN DO IT TO THE EXTENT THAT YOU LET THEM DO IT HOWEVER THEY WANT TO DO IT.

BUT TO US, THIS IS A VERY NARROW SET OF ISSUES. IT'S BEEN THROUGH REEXAM.  THE IDS DISCLOSURES ON THIS THING ARE VOLUMINOUS.  DOZENS OF PIECES OF ART WERE ALREADY CONSIDERED BY THE EXAMINERS.  IN FACT, BY A PANEL OF THREE SENIOR EXAMINERS.

THEY HAVE NOT IN OUR MEETINGS AND IN OUR DISCUSSIONS HAVE NOT DISCLOSED A SINGLE ADDITIONAL PIECE OF ART.  NOTHING, ALTHOUGH THEY WERE INVITED TO DO SO.

IT'S A VERY SIMPLE CASE AS LONG AS WE DON'T MAKE IT NOT SIMPLE BECAUSE OF WHATEVER REASONS AND AGENDAS THERE MAY BE FOR MAKING IT NOT SIMPLE.  BUT I DEFER TO THE COURT.  I MEAN, YOU'VE BEEN DOING THIS A HECK OF A LOT LONGER THAN I HAVE, I IMAGINE.  AND I DEFER TO THE COURT TO HANDLE THE SCHEDULE HOWEVER YOU WISH.

BUT I WOULD LIKE FOR A NICE, NARROW, FOCUSSED 90 DAYS TO FIGURE OUT IF THERE'S INFRINGEMENT.  I THINK WHAT WE ARE GOING TO FIND OUT IS THERE IS, BECAUSE HE'S NOT TELLING YOU TODAY:

"WE DON'T USE LPCVD."

AND HE'S NOT TELLING YOU TODAY THEY DON'T ANNEAL. AND THOSE ARE THEIR GET-OUT-OF-JAIL-FREE CARDS.  ALL THEY HAVE GOT TO DO IS GIVE US THE RECIPES, AND IF THOSE THINGS AREN'T THERE, WE ARE DONE.  SO, OBVIOUSLY, THEY ARE THERE, AND HE KNOWS

THEY ARE THERE.

SO LET'S JUST GET IT OUT THERE, NARROW THE ISSUES AND THEN, IF WE CAN'T GET IT RESOLVED, WE WILL START THE PATENT LOCAL RULES IN A SET 9O DAYS FROM NOW.

**THE COURT:** WHAT DISCOVERY -- WHAT -- FIRST OF ALL, WHEN IS YOUR TRIAL IN TYLER, TEXAS?

**MR. SHORE:** OCTOBER 12.

**THE COURT:** AND WHAT DISCOVERY WOULD YOU NEED --

**MR. SHORE:** THE KEY --

**THE COURT:** -- EARLY ON.

**MR. SHORE:** YES, MA'AM.  THE KEY PROCESS IS THEIR PROCESS FLOWS, WHICH ARE BASICALLY THE RECIPES ABOUT HOW THESE THINGS ARE MADE.  OKAY.  THAT'S THE KEY PIECE OF EVIDENCE, AND WE'VE REQUESTED THAT.

WE'VE ALREADY EXCHANGED INTERROGATORIES AND REQUESTS FOR PRODUCTION.

**THE COURT:** OKAY.

**MR. SHORE:** IF WE GET THOSE ANSWERED, I THINK WE CAN -- IF WE GET THEM ANSWERED WITHOUT OBJECTION, THEY ACTUALLY GIVE US THE PROCESS FLOWS AND RECIPES, THEN WE WILL KNOW IMMEDIATELY. AS SOON AS THEY GIVE US THAT INFORMATION.

AND OUR PART OF THE CASE, ANYWAY, AS FAR AS WE'RE CONCERNED ON INFRINGEMENT, OUR REVERSE ENGINEERING THAT WE HAVE ALREADY PROVES EVERY OTHER ELEMENT OF THE CLAIMS.  SO THOSE ARE THE TWO ELEMENTS THAT WE NEED PROOF ON.

AND WE WANT TO BE EFFICIENT.  WE WANT TO BE QUICK.  I MEAN, I WOULD LOVE TO BE READY TO TRY THIS CASE -- I KNOW THE COURT'S SCHEDULE IS ITS OWN -- BUT I COULD BE READY TO TRY THIS CASE IN SIX MONTHS IF THEY WOULD COOPERATE WITH DISCOVERY.

**THE COURT:**  WELL, LET ME ASK YOU THIS:  IF YOU GET THIS DISCOVERY, AND IF THEY DON'T WANT TO BRING A MOTION, WOULD THAT ASSIST YOU IN FRAMING A MOTION DIRECTED TO THE BROADENING ISSUE?

NOBODY SAYS IT HAS TO COME FROM THEM.

**MR. SHORE:**  I GUESS I NEED TO LOOK AT THE DECLARATORY JUDGMENT ACT AND SEE IF I -- IF WE'VE GOT THE ABILITY TO DO THAT TO AMEND OUR PLEADINGS TO ASK FOR A DECLARATION OF THE RIGHTS OF THE PARTIES WITH REGARD TO THE SCOPE OF THE PATENT, SURE.  OR IT MAY BE LIKE A MINI CLAIMS CONSTRUCTION ON THAT ISSUE ALONE. THAT'S ANOTHER WAY THAT WE MIGHT BE ABLE TO GET THAT DONE.

BUT I THINK THOSE -- I THINK HE WOULD AGREE.  I MEAN, THERE MAY BE OTHER ISSUES. BUT THOSE --

**THE COURT:**  THERE'S NOTHING THAT PREVENTS YOU AS A DEFENDANT FROM FILING A MOTION IF YOU THINK THAT THAT MOTION IS GOING TO EITHER BE DISPOSITIVE OR PARTIALLY DISPOSITIVE OF A CRITICAL ISSUE IN THE CASE.

**MR. SHORE:**  WE WILL FILE IT.

**THE COURT:**  CALL IT WHATEVER YOU WANT TO. YOU CAN CALL IT --

**MR. SHORE:**  A MOTION TO CLEAR THE DECK.

**THE COURT:** A MOTION, YOU KNOW -- YOU KNOW, FOR PARTIAL ADJUDICATION, YOU KNOW, AND TO ADJUDICATE.  AND THEN, IDENTIFY THE ISSUE TO BE ADJUDICATED.

ON THE OTHER HAND, WHEN YOU GET THIS DISCOVERY IT MAY BE, YOU KNOW, YOU'LL CALL HIM UP AND SAY:

"I THINK WE NEED TO TALK, AND WE CAN GET THIS RESOLVED, TOO."

I MEAN, THERE'S THAT POSSIBILITY, AS WELL.

IF IT WERE LEFT TO YOU TO FILE A MOTION, WHEN WOULD YOU GET -- BE LIKELY TO GET THAT FILED?

**MR. SHORE:** WITHIN THE 90 DAYS, CERTAINLY WITHIN THE 90 DAYS.  AND THAT ACTUALLY, AS I THINK ABOUT THIS -- AND EXCUSE ME FOR BEING A LITTLE BIT EXTEMPORANEOUS.  BUT IF WE TAKE THE 90 DAYS, AND WE DO THE DISCOVERY AND WE GET THAT MOTION ON FILE, BEFORE WE EVER HAVE A HEARING OR THEY EVER HAVE TO RESPOND WE CAN HAVE OUR MEETING.

**THE COURT:** WELL, AND WE GO THROUGH ALL THAT, YOU KNOW, THE WHAT CLAIMS NEED TO BE CONSTRUED AND, YOU KNOW, WHAT ARE THE -- YOU KNOW, WHICH ONES ARE REALLY DISPUTED AND WHAT TERMS AND SO FORTH ARE DISPUTED.

**MR. SHORE:** ONE CLAIM.

**THE COURT:** AND DOING ALL THE IDENTIFICATION AND SO FORTH OF THAT.

**MR. SHORE:** ONE CLAIM, YOUR HONOR. THERE'S ONLY ONE CLAIM.

**THE COURT:**  ONLY ONE CLAIM IN THE PATENT?

**MR. SHORE:**  THERE'S ONLY ONE CLAIM THAT THEY SAY WAS BROADENED.

**THE COURT:**  OH, OKAY.

**MR. SHORE:**  THAT ONLY ATTACHES TO ONE CLAIM.  AND THAT IS THAT THE PRIMARY -- THERE MAY BE SOME DEPENDENT CLAIMS BENEATH THAT, BUT THAT IS THE PRIMARY INDEPENDENT CLAIM THAT WILL BE AT ISSUE, UNLESS DISCOVERY SHOWS SOMETHING WHICH NOBODY EXPECTS, WHICH I DON'T THINK IT WILL.

**THE COURT:**  SO, IN OTHER WORDS, IF YOU WERE TO MAKE A CLAIM OF INFRINGEMENT YOU EXPECT THAT IT WOULD BE ONLY AS TO THAT ONE CLAIM, AS WELL.

**MR. SHORE:**  THE ONE INDEPENDENT CLAIM, AND PERHAPS SOME DEPENDENT CLAIMS.

**THE COURT:**  THE ONE INDEPENDENT CLAIM.

**MR. SHORE:**  THAT'S AS FAR AS WE KNOW RIGHT NOW.  AND, AGAIN, WE ONLY NEED ONE CLAIM. AND I THINK THAT IS THE CLAIM. SO HOPEFULLY -- AND, AGAIN, I APOLOGIZE FOR BEING A LITTLE EXTEMPORANEOUS -- BUT IF WE GET THE 90 DAYS I CAN TELL YOU I CAN GET THAT MOTION FOR WHATEVER FILED WITHIN THE 90 DAYS.

**THE COURT:**  I'M A FIRM BELIEVER IN -- AND WE DON'T HAVE TO RELIGIOUSLY FOLLOW THE RULES.  YOU KNOW, EACH CASE SHOULD BE HANDLED WITHIN THE CONTEXT OF THE RULES, YOU KNOW, INDIVIDUALLY. EACH CASE IS DIFFERENT.

AND SOMETIMES I'VE SET MOTIONS WHERE SOMEBODY THINGS

THEY REALLY HAVE A VERY STRONG INVALIDLY BASIS FOR CHALLENGING THE PATENT OR CLAIMS IN THE PATENT. I SET THOSE EARLY ON.

IF NONE OF THAT COULD BE DONE WITHOUT CLAIM CONSTRUCTION, THEN WE HAVE TO GO TO CLAIM CONSTRUCTION. BUT IF YOU THINK THIS CAN BE DONE WITHOUT CLAIM CONSTRUCTION, FINE. AND YOU FILE YOUR MOTION.

IF THE ARGUMENT IS:

"WE COULDN'T POSSIBLY DO THAT WITHOUT CLAIM CONSTRUCTION, OR WE COULDN'T POSSIBLY RESOLVE IT WITHOUT THIS, THAT OR THE OTHER THING," THEN I, AT LEAST IN THE CONTEXT OF WHAT IS FILED AND YOUR RESPONSE, I CAN TELL THAT.

SO WHY DON'T YOU GO AHEAD AND DO WHATEVER DISCOVERY YOU NEED TO DO AND CAN DO WITHIN THE 90 DAYS?  AND LET'S SET A DATE BY WHICH YOU'LL GET YOUR MOTION FILED.  AND WE WILL HAVE A HEARING, HAVE THE BRIEFING ON THAT AND HAVE THE HEARING ON THAT MOTION, AND SEE WHAT WE HAVE.

**MR. BLANKENHEIMER:**  WOULD YOU LIKE US TO SUBMIT TO YOUR HONOR, ASSUMING THAT YOUR HONOR HAS NOW AGREED THAT THE PERIOD SHOULD BE 90 DAYS BEFORE THE LOCAL RULES KICK IN, WOULD YOU LIKE US TO SUBMIT JOINTLY A SCHEDULE PINPOINTING THE DATES IN THE CASE MANAGEMENT SCHEDULE?

**THE COURT:**  BEYOND THAT DATE?

**MR. BLANKENHEIMER:**  BEYOND THAT DATE.

**THE COURT:**  BEYOND THE DATE, NO.

**MR. BLANKENHEIMER:**  OKAY.

**THE COURT:**  WE WILL TAKE IT UP AT THE MOTIONS DATE.

**MR. BLANKENHEIMER:**  OKAY.

**THE COURT:**  BUT I DO WANT YOU TO GO AHEAD WITH SOME DIS -- YOU KNOW, BE EFFICIENT WITH THE DISCOVERY AND DO WHAT DISCOVERY YOU NEED TO DO TO BRING THAT MOTION AND FOR YOU TO RESPOND TO THAT MOTION, IF THERE'S DISCOVERY THAT YOU NEED TO DO IN RESPONSE.

AND SO LET'S SET A DATE BY WHICH --

**MR. SHORE:**  I CAN HAVE IT DONE 90 DAYS FROM TODAY.  I WILL HAVE THAT MOTION ON FILE.

**THE COURT:**  WHAT DATE WOULD THAT BE?

**THE CLERK:**  DECEMBER 20TH.

**THE COURT:**  DECEMBER 20TH, OKAY?  DECEMBER THE 20TH, OPPOSITION -- THAT'S RIGHT BEFORE THE HOLIDAYS, I GUESS, RIGHT?

**MR. SHORE:**  I'M A BIG HOLIDAY PERSON SO --

**THE COURT:**  YOU UNDERSTAND, OKAY.  THEY CELEBRATE THAT IN TEXAS, RIGHT?

**MR. SHORE:**  WE DO.  WE DO.

**THE COURT:**  LET'S SEE.  JANUARY -- WHAT IS THE SECOND --

**THE CLERK:**  TENTH.

**THE COURT:**  JANUARY 10TH, IS THAT ENOUGH TIME TO RESPOND TO THE MOTION?

**MR. BLANKENHEIMER:**  IF WE CAN GET ANOTHER WEEK THAT

WOULD BE BETTER, JUST BECAUSE OF HOLIDAY PLANS.

**THE COURT:**  JANUARY 17TH IS A HOLIDAY, BUT ECF IS UP AND RUNNING, AND YOU ARE GOING TO FILE IT ON ECF, SO THAT'S FINE.

AND THEN, YOUR REPLY WOULD BE DUE THE FOLLOWING WEEK. GIVE YOU TWO WEEKS, BECAUSE IT'S PROBABLY NOT YOUR TYPICAL RUN-OF-THE-MILL MOTION.  SO TWO WEEKS FOR REPLY?

**MR. SHORE:**  THAT'S FINE. THAT'S FINE.

**THE CLERK:**  THE 31ST.

**THE COURT:**  AND THEN, THE HEARING DATE?

**THE CLERK:**  FEBRUARY 14TH.

**MR. SHORE:**  OH.

**MR. BLANKENHEIMER:**  THAT MIGHT GET US ALL IN A LITTLE TROUBLE, YOUR HONOR.

**THE COURT:**  GET YOU ALL IN A LITTLE TROUBLE, YES, PARTICULARLY IF YOU HAVE TO TRAVEL.

**MR. SHORE:**  MY WIFE'S A LAWYER, SO --

**THE COURT:**  SHE'D UNDERSTAND, WOULDN'T SHE?

**MR. SHORE:**  NO.

**THE COURT:**  NOT REALLY.  IT'S THAT FEDERAL JUDGE THERE, YOU KNOW.  YOU CAN ALWAYS BLAME IT ON THAT FEDERAL JUDGE.

**MR. SHORE:**  IF YOU WERE A MALE FEDERAL JUDGE SHE WOULD UNDERSTAND.  SHE WOULD NOT UNDERSTAND YOU DOING THAT TO ME.

**THE COURT:**  WELL, THE NEXT DAY IS SUSAN B. ANTHONY'S

BIRTHDAY, SO THAT I WOULDN'T --

**MR. SHORE:**  SHE WOULDN'T UNDERSTAND THAT, EITHER.

**THE COURT:**  NO, I WOULDN'T.

**THE CLERK:**  21ST?

**THE COURT:**  21ST, THEN.  WE USUALLY DO THESE ON MONDAY, OKAY?  SO I CAN GIVE YOU MAYBE ANOTHER WEEK, BUT ON THE OTHER HAND THAT WILL GIVE ME PLENTY OF TIME TO READ WHAT YOU'VE SUBMITTED, AND MY LAW CLERK, SO --

**MR. SHORE:**  I DON'T NEED MORE TIME TO REPLY.

**THE COURT:**  NO.  OKAY.  OKAY.  THAT'S FINE.

**MR. BLANKENHEIMER:**  SO THE 24TH FOR THE OPPOSITION?

**THE COURT:**  OH, YOU'RE TRYING TO BUY SOME MORE TIME?

**MR. BLANKENHEIMER:**  I WAS TRYING TO BUY SOME MORE TIME.

**THE COURT:**  LET'S STICK WITH IT.  YOU'VE GOT ALMOST A WHOLE MONTH THERE.  AND, ADMITTEDLY, SOME OF THAT TIME YOU ARE PROBABLY GOING TO BE CELEBRATING THE HOLIDAYS, BUT NOT ALL OF IT.

**MR. BLANKENHEIMER:**  OKAY.

**THE COURT:**  OKAY.  SO WE WILL LEAVE THE DAYS AS WE HAVE THEM, AND THE HEARING WILL BE ON WHAT IS IT NOW, TONY?

**THE CLERK:**  THE 21ST OF FEBRUARY.

**THE COURT:**  21ST OF FEBRUARY AT 2:00 O'CLOCK.

**MR. SHORE:**  NOW, WE HAD A COUPLE OF MINOR -- WELL, I DON'T KNOW HOW MINOR THEY ARE.  WE HAD A COUPLE OF DISAGREEMENTS

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

ON THE SCOPE OF ESI DISCOVERY AND PRIVILEGE.  I THINK WE CAN TABLE THOSE UNTIL THE END OF THIS 90-DAY PERIOD, BECAUSE IN THIS INITIAL 90-DAY DISCOVERY PERIOD I CAN LIVE WITH THE LIMITATIONS THAT HE WANTS.

THE COURT:  OKAY.

MR. SHORE:  IF WE DON'T GET IT RESOLVED, I MAY COME BACK AND ASK --

THE COURT:  OKAY. OKAY.

MR. SHORE:  -- THAT THOSE LIMITATIONS NOT EXIST IF THE CASE GOES INTO, YOU KNOW, FULL-BLOWN LITIGATION MODE.

THE COURT:  WELL, SURE.  THEN, WE WILL TAKE -- THEN, HOLD THAT, AND WE WILL TAKE THAT UP AT THE TIME OF THE HEARING, OKAY?

MR. SHORE:  OKAY.  I THINK THAT'S --

THE COURT:  NOW, IF YOU DECIDE NOT TO PURSUE THE MOTION, THEN DO YOU WANT TO COME IN HERE ANY EARLIER FOR A CASE MANAGEMENT CONFERENCE?  BECAUSE, OTHERWISE, WE WILL HAVE A CASE MANAGEMENT CONFERENCE AT THE TIME OF THE MOTION.

MR. SHORE:  IF WE DECIDE NOT TO, WE WILL LET THE COURT AND OPPOSING COUNSEL KNOW ON THE DAY THE MOTION'S DUE IF WE'RE NOT -- WELL, ACTUALLY, WE WILL LET THEM KNOW AS SOON AS WE DECIDE WE ARE NOT GOING TO DO IT THAT WE'RE NOT GOING TO DO IT NO LATER THAN THE DAY IT WOULD HAVE BEEN DUE.

THE COURT:  AND THEN, WE CAN SET AN EARLIER DATE FOR CMC SO IT'S NOT LANGUISHING.

**MR. SHORE:** YES, YOUR HONOR.

**THE COURT:** AND GET THE OTHER DATES, OKAY?

**MR. BLANKENHEIMER:** THAT'S FINE.

**THE COURT:** IS THAT GOING TO WORK FOR EVERYBODY?

**MR. SHORE:** I BELIEVE SO.

**THE COURT:** IN THE MEANTIME, WE'RE NOT GOING TO HAVE ANY DISCOVERY PROBLEMS, ARE WE?

**MR. SHORE:** NOT FROM US.

**MR. BLANKENHEIMER:** WE WOULD -- WITH THAT ASSURANCE FROM MR. SHORE, I'M SURE WE WILL BE FINE.

**THE COURT:** YOU WORK IT OUT. YOU HEARD THE INSTRUCTIONS EARLIER. IF WORSE COMES TO WORSE, AND YOU'VE TRIED TO WORK IT OUT AND YOU'D MADE A GOOD FAITH EFFORT AND YOU'VE NOT BEEN ABLE TO DO IT, THEN CONTACT MR. BOWSER, AND WE WILL HAVE A PHONE CONFERENCE.

I DON'T WANT TO SEE ANY PAPER; MOTIONS TO COMPEL AND MOTIONS FOR PROTECTIVE ORDER.

SPEAKING OF PROTECTIVE ORDERS, ARE YOU GOING TO LIVE WITH THE STANDARD PROTECTIVE ORDER THAT THE DISTRICT HAS, OR ARE YOU GOING TO DRAFT YOUR OWN?

**MR. BLANKENHEIMER:** WE PROBABLY WILL DRAFT OUR OWN, BUT WE WILL USE THE EXISTING ORDER AS A DEFAULT IN THE INTERIM.

**THE COURT:** IN THE INTERIM. OKAY. FINE.

AND PRESERVATION?

**MR. BLANKENHEIMER:** THAT'S COVERED.

THE COURT:  HAS THERE BEEN PRESERVATION?  YOU'VE ALREADY --

MR. BLANKENHEIMER:  YES, YOUR HONOR.  THAT'S, I THINK, COVERED IN THE CASE MANAGEMENT STATEMENT.

THE COURT:  OKAY.  FINE.  SO YOU ARE BOTH LIVING WITH THAT?

MR. BLANKENHEIMER:  YES.

THE COURT:  NOW, I THINK -- YOU KNOW, I HAD ANOTHER PATENT CASE JUST BEFORE THIS, AND SO I CAN'T REMEMBER WHETHER IT WAS YOURS THAT HAD THE PRESERVATION DISCUSSION OR NOT.

LET ME JUST SEE.

YES.  YES, IT WAS. OKAY.

NOW, HAS THERE -- IS THERE ANY LITIGATION AT ALL WITH RESPECT TO BING YEH AND TRADE SECRETS, TRADE SECRET LITIGATION AT ALL?

MR. SHORE:  NO, YOUR HONOR.  IN FACT, ANY TRADE SECRET PROBLEMS PROBABLY HAVE A STATUTE OF LIMITATIONS ISSUE ASSOCIATED WITH THEM.  I DON'T KNOW HOW GOOD THE DISCOVERY RULE WOULD BE ON SOMETHING LIKE THAT.

BUT THE QUESTION ABOUT MR. YEH, ALTHOUGH HIS COMPANY GOT BOUGHT BY MICROCHIP, FOR WHATEVER REASON, I DON'T KNOW THE DETAILS, THEY DIDN'T GET ALONG.  AND HE'S ALREADY LEFT AND NOW FORMED HIS OWN COMPANY CALLED "GREENLIANT."

WE'RE NOT REALLY SURE WHAT GREENLIANT IS DOING, OR HOW THEY ARE DOING IT.  I DON'T THINK THAT'S AN ISSUE FOR TODAY.

**THE COURT:** MAYBE THEY ANNEAL, ALSO, AND THE SAME TECHNOLOGY.

**MR. SHORE:** THERE MAY BE SOME THIRD-PARTY DISCOVERY FROM GREENLIANT DURING THIS 90-DAY PERIOD.  BUT WE'RE TRYING TO KEEP IT AS FOCUSED AND LASER-LIKE AS WE CAN DURING THIS 90-DAY PERIOD.

**THE COURT:** AND IN KEEPING WITH ALL OF THAT, WOULD IT BE -- EVEN BEFORE FILING THIS MOTION FOR SUMMARY JUDGMENT, WOULD IT BE USEFUL TO HAVE -- I DON'T KNOW WHAT YOU SAID ABOUT ADR -- BUT USEFUL TO HAVE ANY KIND OF AN EARLY SESSION --

**MR. BLANKENHEIMER:** WE DID, YOUR HONOR.

**THE COURT:** -- WITH A MEDIATOR?

**MR. BLANKENHEIMER:** THE PRINCIPALS HAVE MET AND DISCUSSED THE CASE AND WERE UNABLE TO RESOLVE IT. AND SO WE THINK THAT WE'RE ALWAYS WILLING TO TALK TO THE OTHER SIDE, BUT WE DON'T THINK THAT WOULD BE PRODUCTIVE IN THE NEAR TERM.

**THE COURT:** WELL, WHAT YOU SAID WAS:

"THE PARTIES AGREE TO PURSUE PRIVATE, NONBINDING MEDIATION; BELIEVE IT MAY BE PRODUCTIVE TO MEDIATE RELATIVELY EARLY IN THE CASE."

**MR. BLANKENHEIMER:** YES.

**THE COURT:** NOT THIS EARLY, IS THAT WHAT YOU'RE SAYING?

**MR. BLANKENHEIMER:** THAT'S WHAT I'M SAYING.

**THE COURT:** DO YOU THINK IT WOULD BE HELPFUL TO GET

SOMEBODY WHO WOULD KNOCK HEADS TOGETHER?

     **MR. SHORE:**  I THINK WE NEED TO HAVE OUR 90-DAY PERIOD.

     **THE COURT:**  OKAY.  OKAY.

     **MR. SHORE:**  ONE THING ABOUT -- THESE TWO CEO'S KNOW EACH OTHER.  THEY HAVE ALREADY MET PERSONALLY ABOUT THIS CASE WITH COUNSEL PRESENT, AND EVEN WITHOUT COUNSEL PRESENT THE TWO CEO'S HAVE MET AND DISCUSSED THE CASE, SO --

     **THE COURT:**  THAT'S WHEN THINGS REALLY GET SETTLED, I'VE FOUND.

     **MR. SHORE:**  SO IT IS --

     **THE COURT:**  I'VE DONE THAT WHEN I'VE HAD TO SETTLE OTHER JUDGES' CASES.  AND JUST, YOU KNOW, TELL THE TWO CEO'S "GO TAKE A WALK."  AND IT'S AMAZING.  THEY COME UP WITH SOME GOOD BUSINESS JUDGMENTS.

     **MR. SHORE:**  BUT THEY ARE WALKING.  THEY ARE WALKING.

     **THE COURT:**  WALKING AND TALKING.

     **MR. SHORE:**  THEY ARE WALKING AND TALKING, JUST NOT AGREEING YET.

     **THE COURT:**  OKAY. WELL, THAT'S GOOD.

     BUT THERE ARE ALWAYS THOSE PEOPLE OUT THERE WHO CAN KNOCK HEADS TOGETHER, SO LET ME KNOW WHEN YOU'RE READY.  THERE ARE CERTAIN THINGS YOU NEED TO KNOW BEFORE YOU GO OUT FOR MEDIATION, THAT'S FINE.

     **MR. SHORE:**  YES, MA'AM.

**THE COURT:** OKAY. SO WE WILL SEE YOU, THEN, AT THAT FEBRUARY --

**THE CLERK:** 21ST.

**THE COURT:** -- 21ST DATE. AND BEFORE THAT, IF THERE'S NO MOTION. AND YOU'LL CONTACT MR. BOWSER FOR A DATE, THEN.

**MR. BLANKENHEIMER:** VERY GOOD, YOUR HONOR.

**THE COURT:** OKAY. THANK YOU.

**MR. SHORE:** THANK YOU, YOUR HONOR.

**THE COURT:** SO IF I DON'T SEE YOU BEFORE THEN, HAVE A GOOD HOLIDAY.

SEEMS LIKE AN AWFUL LONG WAY OFF.

**MR. BLANKENHEIMER:** WISH THAT WERE SO.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 22ND DAY OF SEPTEMBER, 2010.


_____

/S/ KATHERINE WYATT