PAGES 1 – 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN HALL PATEL, JUDGE

SILICON STORAGE TECHNOLOGY, INC.,   )
                                     )
            PLAINTIFF,               )
                                     )
  VS.                                ) NO. C 10–1515 MHP
                                     )
XICOR LLC,                           )
                                     )  SAN FRANCISCO, CALIFORNIA
            DEFENDANT.               )  MONDAY
                                     )  MARCH 7, 2011
_____)  3:00 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          COVINGTON & BURLING LLP
                            9191 TOWNE CENTRE DRIVE
                            6TH FLOOR
                            SAN DIEGO, CALIFORNIA 92122–1225
                       BY:  **JO DALE CAROTHERS, PH.D.**
                            **CHRIS J. LONGMAN, ESQUIRE**
                            **ALAN H. BLANKENHEIMER, ESQUIRE**

**FOR DEFENDANT:**          SHORE CHAN BRAGALONE DEPUMPO LLP
                            BANK OF AMERICA PLAZA
                            901 MAIN STREET, SUITE 3300
                            DALLAS. TEXAS 75202
                       BY:  **ALFONSO GARCIA CHAN, ESQUIRE**
                            **CHRISTOPHER L. EVANS, ESQUIRE**
FURTHER APPEARANCE ON NEXT PAGE.
*REPORTED BY:    KATHERINE WYATT, CSR 9866, RMR, RPR*
            *OFFICIAL REPORTER - US DISTRICT COURT*
            *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212–5224

**FURTHER APPEARANCE FOR DEFENDANT:**

**BECK, ROSS, BISMONTE & FINLEY, LLP**

50 WEST SAN FERNANDO STREET, SUITE 1300

SAN JOSE, CALIFORNIA 95113

408-938-0790

BY:  KIM P. ZAPATA, ATTORNEY AT LAW

**MARCH 7, 2011**                                    **3:00 O'CLOCK  P.M.**


                        **P R O C E E D I N G S**

        **THE CLERK:**  CALLING CIVIL CASE NUMBER 10-1515,

SILICON STORAGE TECHNOLOGY VERSUS INTERSIL CORPORATION.

        COUNSEL, PLEASE STEP FORWARD AND STATE YOUR

APPEARANCES.

        **MS. ZAPATA:**  GOOD AFTERNOON, YOUR HONOR.  KIM ZAPATA

OF BECK ROSS APPEARING FOR XICOR.  I HAVE ALFONSO CHAN FROM

SHORE BRAGALONE AND CHRISTOPHER EVANS FROM SHORE BRAGALONE, AS

WELL.

        **THE COURT:**  GOOD AFTERNOON.

        **MR. CHAN:**  GOOD AFTERNOON, YOUR HONOR.

        **MS. CAROTHERS:**  YOUR HONOR, JO DALE CAROTHERS FROM

COVINGTON & BURLING HERE ON BEHALF OF PLAINTIFF SILICON STORAGE.

        AND WITH ME IS ALAN BLANKENHEIMER AND CHRIS LONGMAN.

        **THE COURT:**  GOOD AFTERNOON.

        NOW, WHO IS GOING TO BE HEARD ON THESE MOTIONS?  AND

THEY ARE CROSS MOTIONS, RIGHT?

        **MS. CAROTHERS:**  CORRECT.

        **MR. CHAN:**  YES, YOUR HONOR.

        **THE COURT:**  WELL, THEN, WHY DON'T YOU BOTH JUST STAND

RIGHT HERE, THEN?  AND THE REST OF YOU CAN BE SEATED, THEN.

        AND WE CAN GO OVER SOME OF IT.  THIS ALL STARTED BACK

IN 1988, RIGHT?  THAT WAS THE ORIGINAL PATENT APPLICATION?

**MR. CHAN:** YES, YOUR HONOR. YES, IN MAY 17, 1988.

**THE COURT:** BACK IN 1988, RIGHT?

**MR. CHAN:** YES, YOUR HONOR.

**THE COURT:** AND THEN, THERE WERE A NUMBER OF, WHAT, CONTINUATION APPLICATION, AND THEN ANOTHER PATENT, ISSUE PATENT, OR REISSUE APPLICATION, REISSUE PATENT. AND THEN, WE'RE DOWN TO THE '370 NOW.

**MR. CHAN:** YES, THE REISSUE PATENT.

**THE COURT:** WHICH IS WHAT WE'RE REALLY TALKING ABOUT. BUT HOW MUCH OF THAT HISTORY IS RELEVANT AND CAN BE CONSIDERED FOR THE PURPOSE OF THE RECAPTURE ARGUMENT?

**MS. CAROTHERS:** YOUR HONOR, IT'S PLAINTIFF'S POSITION THAT IT SHOULD ALL BE CONSIDERED, AND IT'S ALL RELEVANT. AND AS THE FEDERAL CIRCUIT TOLD US IN MBO II, YOU LOOK TO THE ENTIRE PROSECUTION HISTORY TO DETERMINE IF A SURRENDER HAS TAKEN PLACE.

AND HERE THAT WOULD INCLUDE THE PROSECUTION HISTORY THAT LED TO THE ORIGINAL '774 PATENT, THEN THE PROSECUTION HISTORY THAT FOLLOWED THE DIVISIONAL THAT LED TO THE '585. AND, FINALLY, THE REISSUE THAT LED TO THE '370.

AND NOT ONLY DID THE FEDERAL CIRCUIT SAY WE LOOK TO THE ENTIRE PROSECUTION HISTORY, HERE THE PLAINTIFF -- HERE XICOR'S STATEMENTS, THE APPLICANT FOR THE PATENTS TO THE PATENT OFFICE EFFECTIVELY TIE THE LINK TO THE THREE TOGETHER FOR US. IT WOULD BE INCONSISTENT NOT TO LOOK AT ALL OF THEM.

FOR EXAMPLE, IN THE ORIGINAL APPLICATION THAT, YOU

KNOW, THE SERIES THAT LED TO THE '774, WHEN A RESTRICTION REQUIREMENT WAS SUPPLIED, THE PATENTEE ARGUED:

"WELL, THERE'S ONLY ONE PROCESS THAT CAN MAKE THE PRODUCT, AND THERE'S ONLY ONE PRODUCT THAT CAN BE MADE BY THE PROCESS, SO THESE ARE ALL REALLY THE SAME."

SO, THEN, WHEN THEY PROSECUTED THE '585, WHICH WAS A PRODUCT THAT WAS CLAIMED AS A PRODUCT-BY-PROCESS CLAIM, THEY WENT ON AGAIN AND SAID TO THE PATENT EXAMINER:

"WELL, CLAIMS 14 THROUGH 20 OF THE NEW APPLICATION ARE VERY SIMILAR TO THOSE THAT ALREADY ISSUED AS PROCESS CLAIMS IN THE '774," THUS INVITING THE EXAMINER TO RELY UPON WHAT HAPPENED IN THE PRIOR FILE HISTORY.

THEN, DURING THE PROSECUTION OF THE '585, AFTER A FINAL REJECTION, IT WENT TO THE BOARD OF PATENT APPEALS. AND AT THAT POINT XICOR TOLD THE BOARD OF PATENT APPEALS:

"YOU HAVE TO GIVE WEIGHT TO THE PROCESS LIMITATIONS, AND YOU HAVE TO GIVE PATENTABLE WEIGHT TO THEM."

WELL, THOSE PROCESS LIMITATIONS ARE PART OF THE SAME PROCESS THAT THEY GOT THE CLAIMS ON IN THE '774.

SO, YOUR HONOR, THEN THE NEXT THING THEY DID WAS THEY TWO YEARS LATER DECIDED THEY WISHED THEY HAD BROADER CLAIMS. THEY STARTED OUT WITH BROAD CLAIMS.  THEY NARROWED THEM, WENT

BACK AND REISSUED, TRIED TO RECAPTURE WHAT THEY HAD SURRENDERED IN THE '370 BY OFFERING UP TWO BROADER CLAIMS.  ALSO BY DELETING TWO LIMITATIONS THE RELATED TO PROCESS LIMITATIONS THAT HAD BEEN PART OF THE PATENT HISTORY FROM THE '774 TO THE '585 TO THE '370.  AND THEY HAVE TOLD THE PATENT OFFICE THEY HAVE TO GIVE PATENTABLE WEIGHT TO THAT.

THUS, YOU CAN'T RUN AWAY FROM THINGS YOU SAID ABOUT THOSE PROCESS LIMITATIONS IN THE '774, PRETEND YOU DIDN'T SAY THEM BECAUSE YOU WISH YOU HADN'T WHEN YOU LOOK AT WHAT HAPPENED IN THE '370.

SO, YOUR HONOR, THESE SHOULD ALL BE CONSIDERED.

**MR. CHAN:**  YOUR HONOR --

**THE COURT:**  ANY REASON WHY THAT'S INCORRECT?

**MR. CHAN:**  WELL, YOUR HONOR, I THINK THE ISSUE IS NOT REALLY WHETHER THEY ARE IN THE BODY OF THE PROSECUTION HISTORY, BUT WHETHER THE '774 PATENT PROSECUTION IS BINDING UPON THE '370 PATENT PROSECUTION AND CONTROLLING AS IT WAS IN THE CASE, IN THE MBO CASE.

THE MBO CASE, WHICH IS RELIED UPON BY THE PLAINTIFF, IS A VERY DIFFERENT SITUATION THAN WHAT WE HAVE HERE. IN MBO AT ISSUE IN THAT CASE WERE PATENTS DEALING WITH A SYRINGE, MECHANICAL APPARATUS CLAIMS.

AND WHAT HAPPENED IN THAT CASE IS THERE WAS A PRIOR PATENT APPLICATION IN WHICH THERE WERE LIMITATIONS RELATED TO A NEEDLE.  AND THE APPLICANT MADE CERTAIN STATEMENTS REGARDING THE

NEEDLE AND THE MECHANICAL APPARATUS LIMITATIONS IN THAT CASE.

IT WAS A STRAIGHT LINE PROCESSION FROM THE ORIGINAL APPLICATION IN THE MBO CASE TO THE APPLICATION THAT RESULTED IN THE PATENT AT ISSUE AND THE CLAIMS AT ISSUE IN THE MBO CASE.

THEY WERE ALL APPARATUS CLAIMS. THEY WERE ALL DIRECTED TO THE SAME INVENTION.

THIS IS A DIFFERENT CASE. IN THIS CASE, WE HAVE ORIGINALLY, AS YOU NOTED EARLIER, IN 1988 THE ORIGINAL '766 APPLICATION THAT WAS FILED.

**THE COURT:**  WHICH STARTED OUT AS A PROCESS AND PRODUCT, RIGHT?

**MR. CHAN:**  YES. IT WAS A -- PATENT LAWYERS OFTEN CALL IT LIKE A "JUMBO APPLICATION."  THEY THROW EVERYTHING THEY HAVE REGARDING A PARTICULAR TYPE OF TECHNOLOGY INTO ONE APPLICATION, A FULL DISCLOSURE.

AFTER THAT, THERE WAS A RESTRICTION REQUIREMENT.  AND THERE IN THAT RESTRICTION REQUIREMENT THE PATENT OFFICE SAID THERE ARE TWO, AT LEAST TWO DISTINCT INVENTIONS HERE. WE HAVE AN INVENTION DIRECTED TO METHOD, AND WE HAVE AN INVENTION DIRECTED TO AN APPARATUS THAT IS THE PRODUCT BY PROCESS CLAIMS THAT LATER RESULTED IN THE '370 PATENT.

OKAY.  SO WE HAVE TWO SEPARATE INTERVENTIONS GOING ON. IN THE '774 PATENT, WHAT HAPPENED THERE IS THAT WE HAD ONLY METHOD CLAIMS AT ISSUE IN THAT CLAIMS BECAUSE ONCE THERE WAS THE SPLIT THAT OCCURRED, WE TOOK -- THE APPLICANT TOOK THE METHOD

CLAIMS, PUT THEM ALL INTO THE '774 PATENT.  THEN, TOOK THE APPARATUS CLAIM, PUT THAT INTO WHAT RESULTED IN THE '203 PATENT APPLICATION AND ALL OF ITS PROGENY, OR ITS DESCENDENTS.

AND WHAT HAPPENED IN THE '774 PATENT APPLICATION, CONTRARY TO WHAT COUNSEL CHARACTERIZES, IS THERE WAS AN EXAMINER, EXAMINER MARY WISNIEWSKI.  AND WHAT SHE DID IS SHE SAID IF CLAIM SEVEN, ONE OF THE INDEPENDENT METHOD CLAIMS, IS AMENDED TO RECITE LOW PRESSURE CVD OR LOW PRESSURE CHEMICAL VAPOR DEPOSITION WITH TEOS, THEN THAT CLAIM WOULD BE ALLOWABLE OVER PRIOR ART, OKAY?

THERE WAS AN AMENDMENT MADE TO THAT CLAIM CONSISTENT WITH THE EXAMINER'S COMMENTS AND THE '774 PATENT CLAIM SEVEN AND SOME OF THE OTHER PATENT CLAIMS WERE ALLOWED.

**THE COURT:**  THAT WAS TO OVERCOME THE PATERSON.

**MR. CHAN:**  THAT WAS TO OVERCOME, YES, IN '774 APPLICATION.  OR PATENT, I'M SORRY.

NOW, IN THE '203 APPLICATION, WHICH RESULTED IN THE '585 PATENT, AND THEN ALSO THE '370 REISSUED PATENT, WE HAD A SEPARATE INVENTION. WE HAD A TOTALLY SEPARATE AND DISTINCT BODY OF PRIOR ART THAT WAS ASSERTED THAT WAS AT ISSUE AND CONSIDERED BY THE APPLICANT AND THE PATENT EXAMINER.

THAT PRIOR ART WAS NOT DIRECTED TOWARD THE METHOD, BUT DIRECTED TOWARD THE ACTUAL APPARATUS.  AND THAT IS REFLECTED IN ALL OF THE AMENDMENTS MADE TO THE CLAIMS.

**THE COURT:**  WELL, YOU WOULD REALLY CALL THE '370 A

PRODUCT BY PROCESS.

**MR. CHAN:**  YES, YOUR HONOR.

**THE COURT:**  RIGHT?

**MR. CHAN:**  YES, YOUR HONOR.

**THE COURT:**  I MEAN, PROCESS IS NOT OUT OF THE PICTURE HERE.

**MR. CHAN:**  NO, IT'S NOT OUT OF THE PICTURE, BUT IT'S DEFINITELY A DISTINCT -- AND THERE'S A DIFFERENCE. THE ART THAT'S AT ISSUE IN THE '774 PATENT IS VERY DIFFERENT THAN THE ART AT ISSUE IN THE '203 AND '585 PATENT, THE 140 APPLICATION AND '370 PATENT APPLICATION.  I'M SORRY, THE REISSUE PATENT.

IN FACT, THEY WERE ACTUALLY EXAMINED BY TWO SEPARATE GROUPS. THE LINE THAT RESULTED IN THE '370 PATENT THAT WE HAVE AT ISSUE TODAY WAS EXAMINED BY ELECTRON DEVICES, DEVICES, ELECTRONIC THINGS, APPARATUS.

WHEREAS, THE '774 PATENT WAS EXAMINED BY GROUP 1100, ART UNIT 1100, WHICH IS FOCUSED ON MATERIALS AND PROCESSES.

AND SO TO ANSWER YOUR HONOR'S QUESTION ABOUT WHETHER IT'S RELEVANT, THEY ALL ARE RELATED.  WE WILL CONCEDE THAT. THEY ALL ARE RELATED APPLICATIONS THAT DERIVE PRIORITY FROM THE SAME ORIGINAL APPLICATION.

BUT IT'S OUR POSITION THAT THE EFFECT OF THE '774 PATENT DOES NOT HAVE THE BINDING EFFECT AS IT DID IN THE MBO CASE UPON THE '370 REISSUE PATENT.

**MS. CAROTHERS:**  YOUR HONOR?

THE COURT: WELL, FIRST OF ALL, CLAIMS 12 AND 13 OF THE '370?

MR. CHAN: YES, YOUR HONOR.

THE COURT: ARE ESSENTIALLY THE SAME AS CLAIMS ONE AND FOUR OF THE '585, RIGHT?

MR. CHAN: WELL, THEY ARE DIFFERENT. THEY ARE DIFFERENT IN OTHER RESPECTS. THEY ARE DIFFERENT BECAUSE THE CLAIMS -- THE CLAIMS THAT RESULTED IN THE '370 PATENT, THEY FOCUS ON THE ACTUAL STRUCTURE, THE TUNNELING LAYERS, THE SECOND ELECTRON TUNNELING LAYERS HAVING PARTICULAR THICKNESSES, HAVING PARTICULAR TYPE OF SILICON DIOXIDE LAYER ASSOCIATED WITH THAT. AND ALSO, CERTAIN TYPES OF FUNCTIONALITY OF A LAYER OVER THAT LAYER OF DEPOSITED SILICON DIOXIDE.

MS. CAROTHERS: YOUR HONOR?

MR. CHAN: THEY ARE STRUCTURED AND RECITED IN DIFFERENT WAYS.

THE COURT: WELL, LET'S TAKE A LOOK AT '585.

MS. CAROTHERS: YOUR HONOR, I BELIEVE YOU JUST ASKED IF THE '585 CLAIM ONE WAS ALMOST THE SAME AS THE '370 CLAIM 12; IS THAT CORRECT?

THE COURT: YES.

MS. CAROTHERS: THEY ARE IDENTICAL EXCEPT THEY ELIMINATED THE REQUIREMENT THAT THE CHEMICAL COMPOUND USED WAS TEOS, OR AS WRITTEN IN LESS FRIENDLY TERMS TETRAETHYLORTHOSILICATE. AND CLAIM FOUR IS IDENTICAL TO REISSUED

CLAIM 13, EXCEPT THAT SAME LIMITATION WAS REMOVED.

**THE COURT:**  OKAY.  THERE'S ONE WAY TO FIND OUT.  IT'S EASIER TO DO IT SIDE BY SIDE.

**MS. CAROTHERS:**  AND IF IT WOULD HELP YOU, YOUR HONOR, WE HAVE A SLIDE THAT WOULD SHOW THAT, IF YOU WOULD LIKE TO SEE IT ON YOUR COMPUTER.

**THE COURT:**  WELL, I'M ACCUSTOMED TO READING THIS FINE PRINT IN THE PATENTS, OKAY?

**MS. CAROTHERS:**  AREN'T WE ALL?

**THE COURT:**  "AN IMPROVED TUNNELING REGION FOR USE WITH AN INTEGRATED CIRCUIT COMPRISING," OKAY?  SO FAR THE SAME.

"A FIRST LAYER OF POLYSILICON."  SAME.

"FIRST ELECTRON TUNNELING LAYER OF THERMAL OXIDE FORMED OVER SAID FIRST LAYER OF POLYSILICON."

AND THE NEXT PARAGRAPH IS EXACTLY THE SAME EXCEPT FOR WHEN IT COMES DOWN TO:

"BEING FORMED BY LOW PRESSURE CHEMICAL VAPOR DEPOSITION." STOPS AND LEAVES OUT:

"COMPRISING THE USE OF TEOS," BECAUSE I'M NOT GOING TO TRY TO PRONOUNCE IT, OKAY?

AND SO IT GOES. I MEAN, IT'S ESSENTIALLY -- IT'S THE SAME.

**MR. CHAN:**  YES.  I'M SORRY IF I MISUNDERSTOOD WHICH PATENTS YOU WERE COMPARING IT TO.  I THOUGHT YOU WERE -- OKAY.

BUT WITH RESPECT TO THE ISSUED CLAIM IN THE '585 PATENT AND THE '37O PATENT REISSUED CLAIM, THAT IS THE DISTINCTION BETWEEN THEM, YES, YOUR HONOR.

THE COURT:  RIGHT.

MR. CHAN:  YES.

THE COURT:  RIGHT.  RIGHT.

NOW, AND IN CONNECTION WITH '774, IN ORDER TO DISTINGUISH OR OVERCOME THE PROBLEMS WITH PATERSON, A DECLARATION WAS SUBMITTED BY -- WHAT'S THE GENTLEMAN'S NAME, OWEN, IS IT, OR --

MS. CAROTHERS:  OWEN, THE VICE PRESIDENT OF XICOR.

THE COURT:  OWEN.  OWEN, RIGHT. RIGHT.

AND THE VERY SAME DECLARATION WAS SUBMITTED IN CONNECTION WITH THE '370.  AND IT'S BASED OR WHAT I THINK IS INTERESTING IS THAT THE BOARD'S CONCLUSION IS BASED IN PART ON WHAT HE SAID IN THAT DECLARATION:

"AS INDICATED, THE ADVANTAGES OF APPELLANT'S CLAIMED PROCESS STEP ARE SET FORTH IN THE OWEN DECLARATIONS AS WELL AS IN THE SPECIFICATION. SUCH ADVANTAGES ARE SUFFICIENT TO ESTABLISH," ET CETERA.

SO YOU RELIED UPON THE SAME DECLARATION FOR THE '774 AS YOU DID FOR THE '58 -- WELL, I'M NOT SURE THE '585, BUT IN REISSUE.

MS. CAROTHERS:  YES. AND IN THE '585, YOUR HONOR.

THE COURT:  AND THE '585 THAT FINALLY LED TO THE, YOU

KNOW, REISSUED PATENT AND THE '370.

I MEAN, THIS IS ALL PART OF THE SAME PICTURE.

**MR. CHAN:**  YES, YOUR HONOR.  THAT'S WHY I BELIEVE --
YES, THEY ARE ALL PART OF THE SAME PICTURE. THEY ALL
EVENTUALLY --

**THE COURT:**  THEN, WHY AREN'T YOU TRYING TO CAPTURE
THAT WHICH YOU SURRENDERED?

**MR. CHAN:**  BECAUSE THE ISSUE IS IN THE '774 PATENT
THERE WAS NEVER ANY SURRENDER OF TEOS.

**THE COURT:**  NO.

**MR. CHAN:**  NOR WAS THERE ANY SURRENDER OF TEOS IN ANY
OF THE APPLICATIONS THAT RESULTED IN THE '585 PATENT OR THE '370
PATENT.

**THE COURT:**  WELL, TEOS, YOU WERE REQUIRED TO PUT TEOS
IN, WERE YOU NOT, IN THE '774?  THAT'S HOW YOU OVERCAME
PATERSON, RIGHT?

**MR. CHAN:**  THERE WAS -- TEOS WAS PUT IN TO OVERCOME
OR ACTUALLY CONSISTENT WITH A COMMENT BY THE EXAMINER WITH
REGARD TO CLAIM SEVEN, OKAY?  BASED ON ONE TYPE OF PRIOR ART.

**THE COURT:**  WHICH IS PATERSON.

**MR. CHAN:**  YES, YOUR HONOR.

NOW, ON --

**THE COURT:**  I'M CURIOUS ABOUT SOMETHING ELSE.

**MR. CHAN:**  YES, YOUR HONOR.

**THE COURT:**  AND IS THAT:  HOW DO YOU OVERCOME PEEK BY

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

JUST HAVING DIFFERENT TEMPERATURES?

**MS. CAROTHERS:**  WELL, YOUR HONOR, WE WOULD ARGUE THAT THAT'S NOT HOW THEY OVERCAME PEEK.

**THE COURT:**  BUT I'M NOT SURE -- THAT'S NOT WHY YOU'RE HERE, BUT I JUST THOUGHT THAT WAS --

**MR. CHAN:**  I COULD ANSWER THAT.

**THE COURT:**  YES.

**MR. CHAN:**  AND THAT ACTUALLY RELATES TO THE ISSUE REGARDING HOW -- HOW THE CLAIMS EVOLVE IN THE '585 PATENT AND LATER ON IN THE '370 PATENT.

NOW, WITH RESPECT TO PEEK AND THE OTHER PRIOR ART REFERENCES OF RECORD, THE AMENDMENTS MADE, THE CHANGES MADE IN THE '585 PATENT WERE NOT DONE TO OVERCOME PRIOR ART. WHAT THEY WERE DONE -- THEY WERE DONE TO VERY SPECIFICALLY AND EXPLICITLY MORE CLEARLY DESCRIBE WHAT THE APPLICANT REGARDS AS HIS INVENTION. AND THAT'S IMPORTANT BECAUSE THE EXAMINER --

**THE COURT:**  WELL, THEY WERE USED TO OVERCOME -- THEY WERE USED TO OVERCOME THE QUESTION OF OBVIOUSNESS UNDER PATERSON, RIGHT?

**MR. CHAN:**  ACTUALLY, FOR A DIFFERENT PURPOSE, YOUR HONOR. YOUR HONOR, WHAT HAPPENED WAS IS THAT THE CHANGES MADE TO CLAIMS -- THE CLAIMS THAT RESULTED -- CLAIM I BELIEVE AT ISSUE IS 1 AND 4 IN THE '585 PATENT.  LATER ON, 12 TO 13 OR 13 AND 14.

THE CLAIMS AT ISSUE THERE WERE THERE WERE LIMITATIONS

THAT WERE ADDED:

"A FIRST ELECTRON TUNNELING" -- OKAY -- "LAYER. A SECOND ELECTRON TUNNELING LAYER, ANNEALING, ADDITIONAL TUNNELING ASPECTS, THE BIAS VOLTAGE."

ALL OF THOSE WERE ADDED TO DISCUSS THE HAZANI -- THERE WAS ALSO A REJECTION UNDER HAZANI AND DOKLAN.

AND WHAT HAPPENED IN HAZANI -- AND WHAT HAPPENED IS THAT THE APPLICANT SAID: --

**MS. CAROTHERS:**  YOUR HONOR?

**MR. CHAN:**  WAIT.

"EXAMINER, I THINK THERE'S A MISUNDERSTANDING WITH REGARD TO THE SCOPE OF THE CLAIMS."

WE HAVE CLAIMS HERE THAT REALLY ARE DIFFERENT IN NATURE IN TERMS OF THE PROBLEMS THEY ARE SOLVING THAT WERE DISCLOSED IN THE PRIOR ART, THE 103 REJECTIONS THAT YOU REFERENCED.

AND SO WHAT THE APPLICANT DID WAS MORE CLEARLY DESCRIBE HIS INVENTION BY INCLUDING THE PROCESS STEPS THAT RESULTED IN THAT STRUCTURE.  AND THAT CONVINCED THE EXAMINER AFTER, OF COURSE, FURTHER PROSECUTION AND DISCUSSIONS WITH THE BOARD OF PATENT APPEALS THAT THOSE CLAIMS WERE ALLOWABLE.

SO THERE WAS NEVER ANY ADDITION TO OVERCOME ANY SPECIFIC ELEMENT TO OVERCOME THE PRIOR ART, BECAUSE IT WAS RECOGNIZED THAT THE DOKLAN REFERENCE ALREADY DISCLOSED LOW

PRESSURE CVD WITH TEOS.

SO TO ADD THESE LIMITATIONS IN THERE, IT WOULD HAVE BEEN MEANINGLESS OTHER THAN TO PROVIDE THE PROPER CONTEXT OF THE INVENTION.

MS. CAROTHERS:  BUT, YOUR HONOR, THIS --

THE COURT:  OR TO TRY TO BROADEN FROM THAT WHICH HAD BEEN SURRENDERED.

MR. CHAN:  BUT THEN, THAT'S WHY WHAT HAPPENED LATER ON DURING THE PROSECUTION OF THE '370 PATENT IS THAT THE EXAMINER SPECIFICALLY ADDRESSED:

IS THERE BROADENING?  IS THERE IMPROPER BROADENING?"

AND ACCORDING TO THE MPEP THAT CONTROLS HIS OR HER PROCEDURES, HE GOES THROUGH -- HERE SHE GOES THROUGH THAT ANALYSIS. AND IF THERE IS AN IMPROPER BROADENING, GOING THROUGH THE FLOW CHART THAT'S REFERENCED HERE -- I BELIEVE BOTH PLAINTIFFS AND DEFENDANTS CITE THE FLOW CHART THAT WE HAVE AT ISSUE HERE -- IF THERE IS BROADENING, THEN IT REQUIRES, IT COMPELS THE EXAMINER TO PUT A STATEMENT IN THE PROSECUTION AND EXPLAIN HIS ANALYSIS.

BUT, ACTUALLY, THE OPPOSITE RESULTED.  IN THE '370 PATENT PROSECUTION HISTORY THERE WAS AN EXPLICIT FINDING BY THE EXAMINER THAT THERE IS NO RECAPTURE.

THE COURT:  IS THAT BINDING ON THE COURT?

MR. CHAN:  NO, IT'S NOT BINDING ON THE COURT, YOUR

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

HONOR, BUT IT'S VERY IMPORTANT. IT HAS TO BE CONSIDERED. IT'S A CONSIDERATION THAT WE BELIEVE THAT THE PLAINTIFFS DID NOT WANT TO CONSIDER BECAUSE THEY WANTED TO GO BACK.  RATHER THAN LOOK AT THE ACTUAL TREATMENT OF THIS ISSUE BY THE PATENT OFFICE IN THE PATENT APPLICATION AND THE PATENT THAT'S CURRENTLY AT ISSUE IN THIS CASE, THEY WANTED TO GO BACK SEVERAL YEARS TO THE PRIOR APPLICATION FOR A DIFFERENT INVENTION IN THE '774 PATENT.

WE THINK THIS IS MORE GERMANE TO THIS PARTICULAR ISSUE.

**THE COURT:**  YES.

**MS. CAROTHERS:**  IF I COULD RESPOND TO SEVERAL OF HIS POINTS. FIRST OF ALL, THE FACT THAT THE EXAMINER FOLLOWED THE EMPATH REQUIREMENTS TO DETERMINE WHETHER THE EXAMINER THOUGHT THERE WAS AN IMPROPER RECAPTURE IS DUE NO SPECIAL DEFERENCE.

IN NORTH AMERICAN CONTAINER NOT ONLY HAD THE EXAMINER DONE THAT ANALYSIS, THIRD PARTIES CHALLENGED THAT THEY THOUGHT IT WAS AN IMPROPER RECAPTURE, THE EXAMINER ALLOWED IT, ANYWAY, AND THE COURT FOUND OTHERWISE.

SO, YOUR HONOR, ANY TIME A RECAPTURE CASE COMES TO THE COURT THE EXAMINER HAS LOOKED AT IT BECAUSE THE PATENT EXAMINING MANUAL TELLS THEM TO.  SO WE'RE NOT IN A PARTICULARLY SPECIAL CASE HERE ON THAT BASIS.

BUT, ALSO, IF WE GO BACK TO WHAT ALL THESE PATENTS ARE ABOUT, FROM THE '774 TO THE '585 TO THE '370, THEY ALL RELATE TO A PARTICULAR TYPE OF MEMORY CELL.

AND IN THAT MEMORY CELL THERE'S CLAIMED A LAYER OF SILICON DIOXIDE THAT IN THE CLAIMS, ALL CLAIMS IN THE '774 AND THE '585 HAD LIMITATIONS THAT SAID THAT SILICON DIOXIDE WAS DEPOSITED USING SOMETHING CALL "LOW PRESSURE CHEMICAL VAPOR DEPOSITION" USING THE CHEMICAL COMPOUND TEOS.

NOW, THIS PARTICULAR LAYER IS JUST USED FOR PROGRAMMING OR ERASING THE CONTENTS OF THE MEMORY CELL. BUT IF YOU GO BACK AND LOOK IN THE ISSUED '774 AND THE ISSUED '585, THEY ALL REQUIRED TEOS.

IN THE '774, THERE WAS A VERY SPECIFIC SURRENDER OF ANYTHING BUT TEOS BY AMENDMENT. AND HESTER TELLS US THERE'S TWO WAYS YOU CAN SURRENDER FOR THE PURPOSE OF RECAPTURE.  ONE IS THROUGH AMENDMENT, ANOTHER IS BY ARGUMENT TO OVERCOME PRIOR ART BY RELYING UPON A LIMITATION IN A CLAIM.

SO IN THE '774, THE EXAMINER SAID THAT:

"CLAIM SEVEN'S INVALID, BUT IT WOULD BE ALLOWABLE IF YOU AMENDED TO ADD TEOS."

CITING TO THE EXAMINER'S COMMENT, XICOR AMENDED AND ADDED TEOS.

THAT IS A VERY CLEAR SURRENDER OF SUBJECT MATTER OTHER THAN TEOS FOR THE PURPOSE OF THE RULE AGAINST RECAPTURE.

AND THEN, THEY GO ON AND TRY TO SAY:

"WELL, IT'S A DIFFERENT INVENTION."

WELL, MBO TOLD US THAT A COURT CAN LOOK TO AND SHOULD LOOK TO DETERMINE IF THERE ARE SURRENDERS IN RELATED PROSECUTION

HISTORIES FOR THE FAMILY, SPECIFICALLY SAYING A DIVISIONAL IS ONE OF THOSE MEMBERS.

WELL, ANY TIME THERE'S A DIVISIONAL THERE'S GOING TO BE DIFFERENCES IN THE INVENTION. BUT HERE THERE ARE LESS DIFFERENCES THAN NORMAL.

THE PROCESS LIMITATIONS PERMEATE ALL OF THE CLAIMS FROM THE '774 TO THE '585 TO THE '370.

AND WHEN I LOOK AT THE CLAIMS AND THE ARGUMENTS MADE TO THE PATENT OFFICE IN THE '585, WE SEE IT WAS SURRENDERED AGAIN, BECAUSE IN THE '585 DIFFERENT REJECTIONS THAN WHAT MR. CHAN WAS DISCUSSING.  YOU LOOK TO THE REJECTION OVER HAZANI AND SATO, BECAUSE THE PATENT EXAMINER SAID:

"THE PRODUCTS IN THE PRIOR ART ARE LIKE, IN HAZANI AND SATO, ARE LIKE WHAT YOU'RE TRYING TO CLAIM HERE, SO IT'S NOT PATENTABLE."

SO WHAT DID XICOR DO?  THEY TURNED TO THE PROCESS LIMITATIONS, BECAUSE ACCORDING TO AMGEN, IF THE PRODUCT IN A PRODUCT-BY-PROCESS CLAIM IS FOUND IN THE PRIOR ART, THE ONLY WAY YOU CAN SAVE IT FROM INVALIDITY IS TO LOOK AT THE PROCESS LIMITATIONS.

AND WHEN YOU LOOKED AT THE PROCESS LIMITATIONS, THEY POINTED TO THE FACT -- AND YOU CAN LOOK AT OWEN'S THIRD DECLARATION. YES, THEY RELIED ON THE SAME TWO FROM BEFORE, BUT THEY SUBMITTED A THIRD ONE. HE PUT IN A PICTURE, POINTED TO THE TEOS LAYER AND SAID:

"THIS IS WHAT CAUSES THE STRUCTURAL DIFFERENCES.

YOU GET FEWER DEFECTS. YOU GET BETTER PINHOLE

COVERAGE.  YOU GET BETTER CONDUCTIVITY."

BUT HE REPEATEDLY IN HIS DECLARATION, THE VICE

PRESIDENT OF XICOR, REPEATEDLY SAID THAT THEY WERE

DISTINGUISHING THE CLAIMS OVER TEOS.

AND SECONDLY, THEY SAY THAT THE PRIOR ART IS

DIFFERENT BETWEEN THE TWO. THEY ARE SEVERAL IN COMMON.  IN FACT,

ON THEIR OWN CHOICE IN PROSECUTING THE '585 TO THE BOARD OF

PATENT APPEALS AND INTERFERENCES THEY TURNED BACK TO THE PEEK

REFERENCE, WHICH THEY HAD DISTINGUISHED OVER IN THE '774.  THEY

TURNED BACK TO THE PEEK REFERENCE AND SAID THAT:

"PEEK GIVES UNEXPECTED RESULTS. THE REFERENCE

IS IMPORTANT BECAUSE IT IS AN EXAMPLE OF THE VIEW

THAT TEOS OXIDE LAYERS WERE INFERIOR TO LAYERS

DEPOSITED BY OTHER TECHNIQUES."

AND WE KNOW THEY WEREN'T JUST TALKING ABOUT

DEPOSITING IT USING LOW PRESSURE CHEMICAL VAPOR DEPOSITION, THEY

WERE TALKING ABOUT USING TEOS AND ARGUING TO OVERCOME ADDITIONAL

REJECTIONS RELATED TO HAZANI, SATO AND KORMA BY SAYING:

"THIS ARTICLE TELLS US THAT A PERSON OF SKILL

IN THE ART WOULD NOT HAVE BEEN MOTIVATED TO USE TEOS

BECAUSE PEEK TOLD US TEOS WAS INFERIOR."

PEEK LOOKED AT SEVERAL WAYS OF DOING LPCVD, LOW

PRESSURE CHEMICAL VAPOR DEPOSITION. THEY LOOKED AT IT WITH HTO,

WHICH USES A DIFFERENT CHEMICAL, EITHER DICHLOROSILANE OR SILANE.

PEEK LOOKED AT USING TEOS.  XICOR ARGUED THAT PEEK FOUND TEOS TO BE INFERIOR; THAT THAT TEACHES AWAY FROM USING TEOS IN THIS APPLICATION.

SO THEY DISTINGUISHED OVER THE ART IN ARGUMENT, NOT JUST ON LPCVD, BUT ALSO ON TEOS.

AND THE TEST HERE, YOUR HONOR, IS:  WHAT WOULD AN OBJECTIVE OBSERVER THINK VIEWING THE FILE HISTORY?

IT WOULD BE TRUE IF YOU LOOKED AT THE FILE HISTORY FOR THE '774, FOR THE '585, WHICH BECAME IN REISSUE THE '370. WHAT WOULD THE OBJECTIVE OBSERVER THINK LOOKING AT THE FILE HISTORY?

WOULD THEY THINK THAT THE APPLICANT DISTINGUISHED -- YOU KNOW, MADE THESE ARGUMENTS OR MADE THESE AMENDMENTS FOR THE PURPOSE OF SECURING THE PATENT?  AND YOU'D BE HARD-PRESSED TO THINK THAT THAT'S NOT WHY XICOR MADE THOSE ARGUMENTS.

**THE COURT:**  AND IS IT ONLY TO OVER -- IF IT'S TO OVERCOME PRIOR ART, OR IS IT SATISFIED IF IT'S TO OVERCOME OBVIOUSNESS?  OR ANTICIPATION WOULD BE PRETTY MUCH THE SAME THING, I GUESS.

**MS. CAROTHERS:**  ANTICIPATION OR OBVIOUSNESS IS THE SAME.  AND AS WE ALSO BRIEFED, WE BELIEVE THEY MADE YET ANOTHER SURRENDER IN THE '774 WHEN THEY AMENDED A CLAIM TO ADD TEOS TO OVERCOME AN ENABLEMENT ARGUMENT UNDER 112.  AND WE'VE BRIEFED

THAT, OR I'M HAPPY TO GO THROUGH THAT ARGUMENT, AS WELL.

BUT ANY ONE OF THESE SURRENDERS ALONE, YOUR HONOR, WOULD BE SUFFICIENT TO VALIDATE CLAIMS 12 AND 13.  WE'VE JUST COVERED QUITE A FEW.

AND TO THE EXTENT THAT THEY FURTHER KEEP TRYING TO SAY:

"WELL, THE PROCESS LIMITATIONS DON'T MATTER BECAUSE IT'S A PRODUCT-BY-PROCESS CLAIM," BUT FOR THOSE PROCESS LIMITATIONS THEY COULDN'T HAVE MADE THE ARGUMENTS THEY MADE THAT THE STRUCTURE WAS DIFFERENT.

SO IF YOU WERE TO ELIMINATE, AS THEY DID IN REISSUED CLAIMS 12 AND 13, THE EXACT LIMITATION THEY ARGUED, I.E., THE USE OF TEOS, THEY HAVE EFFECTIVELY ELIMINATED THE STRUCTURAL DIFFERENCES THAT THEY ARGUED ABOUT.

AND IN THEIR BRIEF TO THE BOARD OF PATENT APPEALS AT THE DOCUMENT BATES NUMBERED INT832, THEY SAID:

"APPELLANT RESPECTFULLY SUBMITS THAT THE PROCESS LIMITATIONS IN THE CLAIMS MUST BE GIVEN PATENTABLE WEIGHT."

BUT HERE, YOUR HONOR, IN THIS CASE, THEY NOW TELL YOU TO DO THE EXACT OPPOSITE.  IN THEIR OPPOSITION BRIEF TO OUR MOTION, AT FIVE THEY SAY:

"PROCESS LIMITATIONS ARE IGNORED BY BOTH THE USPTO AND COURTS WHEN DETERMINING THE VALIDITY OF A PRODUCT-BY-PROCESS CLAIM."

IT'S EXACTLY THE OPPOSITE OF WHAT THEY TOLD THE PATENT EXAMINER AND THE BOARD WHEN THEY WERE TRYING TO GET ALLOWABILITY.

THE COURT:  WELL, IT DOESN'T MAKE ANY SENSE. THAT'S WHY IT'S CALLED "A PRODUCT-BY-PROCESS."

NOW, LET ME ASK YOU THIS:  WHAT PART OF CLAIMS 12 AND 13 ARE PRODUCT?

MR. CHAN:  YOU HAVE A LAYER OF POLYSILICON, YOUR HONOR.  YOU HAVE A FIRST ELECTRON LAYER.  YOU HAVE A SECOND ELECTRON TUNNELING LAYER, AND THAT LAYER HAS A SILICON DIOXIDE LAYER BEING FORMED BY LOW PRESSURE CHEMICAL VAPOR DEPOSITION COMPRISING THE USE OF TEOS.  THEN, YOU HAVE A SECOND LAYER OF POLYSILICON FORMED OVER THE LAYER OF DEPOSITED SILICON DIOXIDE THAT HAS CERTAIN RECITED BIAS VOLTAGE --

THE COURT:  DO YOU HAVE A COPY OF THE '774?  I THOUGHT I HAD IT IN HERE, BUT I DON'T SEE IT.

MS. CAROTHERS:  I BELIEVE WE HAVE A COPY, YOUR HONOR.

THE COURT:  I'M SURE YOU DO. YOU CAN PROBABLY FIND YOURS.  I CAN'T FIND MINE.

MS. CAROTHERS:  AT LEAST ONE OF MY TEAM MEMBERS CAN.

THE COURT:  THERE YOU GO.

DO YOU HAVE IT?

MR. CHAN:  I HAVE A COPY HERE, YOUR HONOR, IF YOU WANT THIS ONE.

THE COURT:  WOULD YOU HAND IT UP?

OKAY.  WELL, WHEN YOU READ IT ALL TOGETHER, I MEAN CLAIMS 12 AND 13 REALLY -- I MEAN, THERE ARE A COUPLE OF WORDS THAT ARE CHANGED HERE AND THERE, BUT IT'S A PROCESS.

YOU KNOW, THE OTHER -- THERE ARE SOME OTHER CLAIMS THAT REFER TO A DEVICE, BUT IT'S NOT ALWAYS WORD FOR WORD, BUT IT IS SO CLOSE TO THESE PROCESS CLAIMS THAT THAT'S WHAT IT IS IS A PROCESS CLAIM.

AND I DON'T KNOW HOW YOU CAN LOOK AT THAT WITHOUT LOOKING AT THE ENTIRE HISTORY. AND THAT, I THINK, IS BORNE OUT BY THE FACT THAT EVEN, YOU KNOW, MR. OWEN SUBMITTED -- OR WHOEVER SUBMITTED IT ON BEHALF OF XICOR -- SUBMITTED TO THE BOARD OF EXAMINERS, OR THE BOARD OF PATENT APPEALS, RATHER, OR THE -- PROBABLY IT CAME UP THROUGH THE APPLICATION OR REISSUE APPLICATION PROCESS TO THE EXAMINER, AND THEN CAME UP TO THE BOARD OF PATENT APPEALS, BUT SUBMITTED THAT VERY SAME DECLARATION.

I JUST -- I MEAN, ESSENTIALLY, THIS SEEMS TO ME TO BE A VERY GOOD EXAMPLE OF WHAT HAPPENS WHEN, YOU KNOW, CLAIMS ARE BROADENED.

**MR. CHAN:**  YES, IT IS.

**THE COURT:**  -- THE SECOND TIME AROUND.

**MR. CHAN:**  YOUR HONOR, I BELIEVE IT IS --

**THE COURT:**  AND, IN FACT, THERE'S AN ATTEMPT TO RECAPTURE THAT WHICH WAS LOST.

**MS. CAROTHERS:**  AND, YOUR HONOR --

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224

**MR. CHAN:**  MAY I SPEAK, YOUR HONOR?

I BELIEVE THIS IS -- THIS IS A SITUATION WHERE YOU DO HAVE CLAIMS THAT ALL DERIVE FROM THE SAME ORIGINAL APPLICATION. THEY ARE RELATED IN THAT SENSE.

BUT TO TAKE IT TO THE NEXT STEP TO SAY THAT THE STATEMENTS MADE WITH RESPECT TO THE PROCESS CLAIMS ARE BINDING ON THE '370 PATENT, WHICH GOES -- WHICH TAKES A DIFFERENT LINEAGE AFTER THE RESTRICTION REQUIREMENT, I THINK IS VERY DIFFERENT.  BECAUSE OPPOSING COUNSEL HAD MENTIONED AND STATES REPEATEDLY THAT THE APPLICANT RELIED ON TEOS AS THE DISTINCTION.

AND THAT IS SIMPLY NOT THE CASE. WHEN YOU LOOK AT THE PROSECUTION HISTORY AS A WHOLE, FROM THE REASONABLE OBSERVER, BOTH AS A PERSON SKILLED IN THE ART AND AS AN EXAMINER, AS SOMEONE WHO IS TRAINED IN PATENTS AS THE '370 PATENT EXAMINER CAL (PHONETIC) DID, YOU'LL SEE THAT WHAT WAS STATED IS THAT -- AND I'LL QUOTE HERE:

"THE TUNNELING OXIDE LAYER OF THE PRESENT INVENTION ARE NOVEL IN THAT THEY ARE FORMED OR GROWN BY MEANS OF AN LPCVD PROCESS, SPECIFICALLY THE TUNNELING OXIDE LAYER IS FORMED BY AN ANNEALING AND OXIDE LAYER OF BETWEEN 250 AND 2000 ANGSTROMS," QUOTE OR PARENTHESES, "(25 TO 200 NANOMETERS)" CLOSE PARENTHESES, "THICK, WHICH HAS BEEN DEPOSITED OVER A THERMALLY OXIDE POLYSILICON LAYER.  THE DEPOSITION IS ACCOMPLISHED BY USING A LOW PRESSURE VAPOR DEPOSITION

SYSTEM WITH TEOS AS THE PREFERRED GASEOUS MEDIUM."

AND WHAT IS IMPORTANT THERE IS THAT THE APPLICANT WAS DRAWING TWO OTHER IMPORTANT DISTINCTIONS, NOT JUST TEOS, BUT ALSO SAYING THAT THERE'S AN LPCVD PROCESS, A LOW PRESSURE CHEMICAL VAPOR DEPOSITION PROCESS, ONE.  THERE WAS AN ANNEALING THAT WAS APPLIED, OKAY?  AND DURING THAT SYSTEM THE DEPOSITION IS ACCOMPLISHED BY USING A LOW PRESSURE VAPOR DEPOSITION SYSTEM WITH TEOS AS THE PREFERRED GASEOUS MEDIUM.

SO I THINK THAT'S IMPORTANT BECAUSE WHAT THAT PREFERRED SAYS IS THAT'S ONE OF SEVERAL DIFFERENT WAYS THAT A PERSON SKILLED IN THE ART COULD PRACTICE THE LP -- L -- LOW PRESSURE CVD PROCESS WITH THE COMBINATION OF ANNEALING, BECAUSE IT WAS RECOGNIZED IN THE PRIOR ART THERE WAS TEOS THERE.  BUT WHAT WAS KEY IN DISTINGUISHING --

**THE COURT:**  WHEN YOU'RE TALKING ABOUT PRIOR ART, WHICH PRIOR ART ARE YOU TALKING ABOUT?

**MR. CHAN:**  WE'RE TALKING ABOUT IN THE '585 PATENT.

**THE COURT:**  YOUR OWN PRIOR ART YOU'RE TALKING ABOUT.

**MR. CHAN:**  YES, THE DEVICE PRIOR ART RELATING TO THE '585 PATENT, WHICH LATER ON WE HAD THE REISSUE OF THE PATENT.

WE HAD THE HAZANI IN VIEW OF THE DOKLAN REFERENCE. THOSE WERE AT ISSUE THERE.  WE ALSO HAD THE SATO AND THE KORMA REFERENCES.

OKAY. AND SO IN RELATION TO THAT, THE APPLICANT WAS TRYING TO DRAW THE EXAMINER'S DISTINCTION TO THE CLAIMS BY

CHANGING THE CLAIMS AND DRAWING THE DISTINCTION TO THESE POINTS, WHICH WE HAVE A NOVEL PROCESS WHERE YOU HAVE LPCVD, ANNEALING WITH TEOS AS THE PREFERRED GASEOUS MEDIUM.

**THE COURT:**  AND THAT WASN'T IN THE '774?

**MR. CHAN:**  NO, THAT WASN'T IN THE '747, YOUR HONOR. WHAT WAS IN --

**THE COURT:**  YOU MUST BE READING A DIFFERENT PATENT THAT I'M READING.

**MS. CAROTHERS:**  IT IS THE SAME SPEC, YOUR HONOR.

**MR. CHAN:**  YES.  IT IS THE SAME SPEC, YES, BECAUSE THEY ALL -- AS I RECOGNIZED, THEY ALL DERIVE FROM THE SAME APPLICATION.  BUT WE'RE TALKING ABOUT DIFFERENT POINTS, DIFFERENT INVENTIONS AND DIFFERENT DISTINCTIONS OVER -- TO OVERCOME THE ARGUMENTS FROM THE EXAMINER.

**THE COURT:**  THAT'S A DISTINCTION WITHOUT A DIFFERENCE, I THINK.

**MS. CAROTHERS:**  YES.  AND I BELIEVE -- I COULD BE WRONG, BUT I BELIEVE YOU WERE JUST QUOTING FROM THE ABSTRACT OF THE PATENT ABOUT THE PREFERRED EMBODIMENT.  WELL, THEY MADE LOTS OF ARGUMENTS, LOTS OF AMENDMENTS, LOTS OF STATEMENTS ABOUT TEOS AFTER THAT ABSTRACT.  AND IT'S THOSE ARGUMENTS, AMENDMENTS AND STATEMENTS THAT CONSTITUTE THE SURRENDER.

**THE COURT:**  OKAY.  WELL, AT ANY RATE THE MATTER IS SUBMITTED.  AND I THINK IT'S PRETTY CLEAR --

**MS. CAROTHERS:**  THANK YOU, YOUR HONOR.

**THE COURT:** -- THAT THIS DOES FALL WITHIN THE RECAPTURE RULES THAT BAR RECAPTURE --

**MS. CAROTHERS:** THANK YOU, YOUR HONOR.

**THE COURT:** -- THAT SURRENDER --

**MR. CHAN:** YOUR HONOR, THERE IS ONE MATTER OF HOUSEKEEPING. IN THE BRIEFS WE HAD WE CITED TO THE PROSECUTION HISTORY OF THE '370 PATENT. BUT I THINK DUE TO AN ERROR WE HAD NOT INCLUDED THEM IN THE APPENDIX. SO I JUST WANTED TO MAKE SURE. WE ARE GOING TO SUPPLEMENT OUR APPENDIX THAT WE HAD TO INCLUDE THOSE SPECIFIC CITATIONS BECAUSE OUR PROSECUTION HISTORY IS NOT COMPLETE.

**THE COURT:** IS IT BATES STAMPED?

**MR. CHAN:** YES, YOUR HONOR.

**THE COURT:** WHAT EXHIBITS ARE THEY?

**MR. EVANS:** IT WOULD BE EXHIBIT A TO OUR ORIGINAL MSJ MOTION. WE SUBMITTED IT --

**THE COURT:** WE HAVE EXHIBIT A THROUGH I.

**MR. EVANS:** THIS WOULD HAVE BEEN PARTS A SUB-THREE THROUGH -- IT WOULD HAVE BEEN SIX.

**THE COURT:** EXHIBIT A --

**MS. CAROTHERS:** YOUR HONOR, I THINK WE SUBMITTED THE SAME THING, SO THEY ARE WELCOME TO RELY UPON OURS.

**THE COURT:** EXHIBIT A IS QUITE SUBSTANTIAL, SO I ASSUME IT'S ALL HERE. HOW MANY PAGES IS IT?

**MR. EVANS:** IT SHOULD RUN THROUGH BATES NUMBER

162359.

THE COURT:  16 -- YES, WE HAVE THAT.

MR. CHAN:  OH, YOU HAVE IT?  OKAY.  THE REASON BEING --

MS. CAROTHERS:  THANK YOU, YOUR HONOR.

MR. CHAN:  -- THAT WHEN WE CHECKED, WE COULDN'T FIND IT ON THE SYSTEM, SO WE WERE CONCERNED --

THE COURT:  WELL, EVERYTHING IS THERE, AND THEN WHAT WE HAVE HERE, YOU KNOW, THAT COMES BY WAY OF COURTESY OR DISCOURTESY COPIES, DEPENDING ON HOW YOU LOOK AT IT, OKAY?

THANK YOU.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 9TH DAY OF MARCH, 2011.


_____

/S/ KATHERINE WYATT


KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (925) 212-5224